**Ruth MILLER, Appellee,**

v.

**Randall S. MILLER, Appellant.**

Superior Court of Pennsylvania.

Argued June 22, 1999.

Filed Dec. 31, 1999.

---

**780**

Stephen B. Harris, Warrington, for appellant.

Maureen T. Gatto, Newtown, for appellee.

Before ORIE MELVIN, SCHILLER and LALLY–GREEN, JJ.

LALLY–GREEN, J.:

¶ 1 In this divorce action, Appellant Randall S. Miller appeals from the order dated November 19, 1998, pertaining to equitable distribution, alimony, and counsel fees. We remand for further proceedings.

¶ 2 The background to this case is as follows:

Ruth A. Miller (Wife) and Randall S. Miller (Husband) were married on October 15, 1986. It was a first marriage for both parties. There were two children born of the marriage: Evan, born May 5, 1987 and Kristen, born June 18, 1989. Husband is currently 44 and wife is 39. During the marriage, the responsibilities were divided between the parties in a traditional manner. Husband was employed in an executive capacity by a large corporation. Wife, in general, stayed home and was the primary caretaker of the children. The parties agreed at the time of [the] hearing that their date of separation was December 26, 1996 although physical separation did not occur until February 8, 1997 when husband moved into an apartment.

Trial Court Opinion, 11/19/98, at 1. The court held three days of hearings on April 8, May 28, and July 21, 1998. On November 19, 1998, the court, *inter alia:* (1) divided the marital property 60% to Wife and 40% to Appellant; (2) awarded alimony to Wife in the amount of $1,400 per month for 30 months; (3) assessed Wife with an earning capacity of $2,000 per month gross, $1,700 per month net; and (4) ordered Appellant to pay $5,000 in counsel fees to Wife. *Id.* at 2, 4–5; Trial Court Order, 11/19/98, at 1–2. This appeal followed.

¶ 3 Appellant raises seven issues on appeal:

1. Whether it was error for the Court not to award Husband two (2) exemptions for 1997 to remediate the incorrect assumption on which both child support and APL was based, and error for the Court not to award Husband one (1) child dependency exemption for 1998 and thereafter.

2. Whether it was error for the Court to disregard $12,455 rental value, and $2788 mortgage foreclosure expenses as a constructive receipt by Wife and error for the Court to dis-

regard $1216 in home equity payments made by Husband in making an award in equitable distribution where all involved a period of time post-separation where wife exclusively occupied the marital residence and made $0 payments on mortgages or taxes associated with the residence.

3. Whether it was error for the Court to disregard the inappropriate and illegal negotiation by Wife of an insurance check issued in the joint names of the parties for $5949 which check was undisclosed to Husband and for the Court to fail to charge same as a constructive receipt by Wife in equitable distribution.

4. Whether it was error for the Court to not find marital misconduct by Wife in the unilateral termination of this marriage and simultaneous pursuit of a relationship with another man and to totally disregard Wife's conduct and the detrimental effect of Wife's conduct on Husband's health and employment status in fixing the term of alimony and applying the economic justice standard requiring an examination of both parties' circumstances.

5. Whether it was error for the Court to award 60% of the marital estate to Wife where the Court seemed to focus on only one factor in its memorandum opinion, that factor being the current income levels of the parties and refused to permit testimony from Wife on her future plans to remarry.

6. Whether it was error for the Court to fix Wife's earning capacity at $2000 per month, apparently based on a concession by Wife of a potential range of $20,000–$23000 which concession was made for the first time post-trial, unsupported by any

evidence of record and not subject to any scrutiny or cross-examination, and error for the Court to disregard Husband's testimony regarding Wife's full-time earning capacity as within a mid-range of $37,000 were Wife to return to her previous type employment in the insurance industry.

7. Whether it was error for the Court to award additional attorney's fees to Wife without any examination of the reasonableness of the fees or the reason for the incurring of same and without adequate consideration of all the circumstances of both parties.

Appellant's Brief at 4–6.

¶ 4 Appellant first argues that the trial court erred by failing to award him two child dependency tax exemptions for tax year 1997 and one child dependency tax exemption for tax year 1998 and thereafter. So far as can be discerned from Appellant's Brief, the exemptions were relevant to calculating child support and alimony *pendente lite* (APL). Appellant's Brief at 4 (exemptions are necessary "to remediate the incorrect assumption on which both child support and APL were based"); *id.* at 15, 18–20 (same). Before we address this issue of first impression, we must determine whether the issue has been preserved for our review. For the reasons that follow, we find that the issue has not been preserved as to tax year 1997, but that it has been preserved as to tax year 1998 and thereafter.[1]

■ ¶ 5 We begin with tax year 1997. Appellant argues that the 1997 child support and APL orders were based upon the assumption that he would be taking five exemptions for tax year 1997, which was his historical withholding status. Appellant's Brief at 18. Wife, who is the primary custodian of the two minor children, refused to agree to give Appellant these

1. We would like to thank our esteemed colleague, the Hon. Berle Schiller, for his keen insights and expertise with respect to the tax exemption issue discussed herein. His contributions to this section of our Opinion have been invaluable.

exemptions or to agree to estimate Appellant's net income based on zero exemptions. *Id.* at 19. As a result, Appellant's projected net income was artificially inflated, and Wife received more support than she would have otherwise received throughout 1997, while Appellant suffered a significant tax liability. *Id.* Appellant seeks to rectify this alleged error by receiving the right to take both dependency exemptions retroactively for tax year 1997.[2]

¶ 6 The record reveals that Wife filed for child support and APL on February 11, 1997. The parties entered an agreed child support order of $924 bi-weekly at the time of the Domestic Relations conference on March 11, 1997; however, no agreement was reached on APL. The parties eventually entered an agreed order of $796 bi-weekly as to APL at the time of the court hearing on May 5, 1997. The trial court held that, if in fact these orders were entered on incorrect assumptions as to Appellant's disposable net income, then Appellant should have filed an appeal from that order, or sought to modify the order when the mistake was discovered. Trial Court Opinion, 2/5/99, at 18.

¶ 7 We agree with the trial court. "A party who has acquiesced in an order or judgment will not later be heard to challenge it." *Karkaria v. Karkaria,* 405 Pa.Super. 176, 592 A.2d 64, 71 (1991). This is not a case where the agreement was specifically conditioned upon Appellant's ability to take the dependency exemptions. Because Appellant acquiesced to the 1997 orders, he cannot now be heard to seek "remediation" with respect to those orders. *Id.*

¶ 8 In contrast, the record reveals that as to the period beginning January 1998 (during which a petition to modify the child support and APL orders was pend-

ing), there was no final adjudication of Appellant's net income, including his right to take a dependency exemption.[3] The parties specifically deferred resolution of child support and APL matters pending the court's determination on this issue. Accordingly, Appellant did not abandon his right to seek a dependency exemption for tax year 1998 and thereafter.

¶ 9 We now turn to the merits of the issue. The parties agree that § 152(e)(1) of the federal Tax Code, 26 U.S.C.A. § 152(e)(1), sets forth the general rule that the custodial parent is entitled to the dependency exemption at issue. The parties also agree that Wife is the custodial parent. This case concerns an exception to the general rule, found at § 152(e)(2). Under this paragraph, the non-custodial parent is entitled to the exemption if "(A) the custodial parent signs a written declaration ... that such custodial parent will not claim such child as a dependent for any taxable year beginning in such taxable year, and (B) the non-custodial parent attaches such written declaration to the non-custodial parent's return for the taxable year[.]" 26 U.S.C.A. § 152(e)(2).

¶ 10 Appellant argues that the trial court has the authority to **order** Wife to file the declaration described in § 152(e)(2), and to allocate the dependency exemption to Appellant. Appellant's Brief at 15–20. The trial court declined to do so, reasoning that it had no legal basis on which to take such action. Trial Court Opinion, 11/19/98, at 5; Trial Court Opinion, 2/5/99, at 19. No controlling case law in Pennsylvania addresses this issue. Appellant argues that this Court should adopt the reasoning of sister states that have authorized trial courts to take the action he seeks. Appellant's Brief at 15–20. After reviewing the legislative history of § 152, decisions of other states that have addressed this issue, and the Divorce

---

2. As of the date of the third equitable distribution hearing in July 1998, Wife had not yet filed her federal tax return, which was on extension. N.T., 7/21/98, at 139.

3. Appellant apparently seeks only one exemption for tax year 1998 and thereafter. Appellant's Brief at 18.

Code, we hold that the trial court does have the authority to award dependency exemptions to a non-custodial parent where appropriate. Our reasoning follows.

¶ 11 Prior to the Tax Reform Act of 1984, § 152(e) provided that the non-custodial parent was entitled to the exemption if he or she paid more than $1,200 per year in child support and the custodial parent could not prove that she provided more support than the noncustodial parent. *Macias v. Macias*, 126 N.M. 303, 968 P.2d 814, 816 (1998); *Boudreau v. Boudreau*, 563 So.2d 1244, 1245 (La.Ct.App.1990). "At that time, it was well-settled that a state court had the authority to allocate a dependency exemption to a noncustodial parent." *Boudreau*, 563 So.2d at 1245.

¶ 12 Congress amended § 152 in 1984 to provide that the custodial parent was automatically entitled to the dependency exemption except in three enumerated instances: (1) where there are multiple support agreements; (2) if a qualified pre–1985 instrument provides that the noncustodial parent shall take the exemptions and that parent pays more than $600 per year; and (3) if the custodial parent signs a written declaration that she will not take the exemption, and attaches that declaration to her tax return. 26 U.S.C.A. § 152(e). It has been suggested that, because the revised statute does not specifically mention state-court allocation of the exemption, federal law precludes such allocation.[4] This argument fails to account for the legislative history of the statute.

■ ¶ 13 In recommending the changes to § 152(e), the House Ways and Means Committee stated:

The present rules governing the allocations of the dependency exemption are often subjective and present difficult problems of proof and substantiation. The Internal Revenue Service becomes involved in many disputes between parents who both claim the dependency exemption based on providing support over applicable thresholds. The cost to the parties and the Government to resolve these disputes is relatively high and the Government generally has little tax revenue at stake in the outcome. The committee wishes to provide more certainty by allowing the custodial parent the exemption unless that spouse waives his or her right to claim the exemption. Thus, dependency disputes between parents will be resolved without the involvement of the Internal Revenue Service.

H.R.Rep. No. 432, 98th Cong., 2d Sess., pt. 3, at 1498–99 (reprinted in 1984 U.S.Code Cong. & Admin. News 697, 1140). It is clear from this legislative history that the "purpose [of the amendments] was to alleviate the administrative burden which had been placed on the Internal Revenue Service (I.R.S.) due to the necessity for it to become involved in making determinations as to which parent provided the larger portion of a child's support if the parties disagreed and both sought to claim the exemption." *Boudreau*, 563 So.2d at 1245–1246. This legislative history does not suggest that the changes were made to preclude state courts from exercising their authority regarding the exemption. *Id.* Instead, "this silence demonstrates Congress' surpassing indifference to how the exemption is allocated so long as the IRS doesn't have to do the allocating." *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449, 457 (1987); *see also Macias*, 968 P.2d at 817 ("We are not disposed to presume that Congress intended to tie the hands of our state judiciary, especially when the law on

---

4. A minority of jurisdictions addressing this issue has concluded that the state courts have no authority to order the custodial parent to sign the declaration waiving the exemption. *See Holley v. Holley*, 547 So.2d 192, 193 (Fla. Dist.Ct.App.1989); *Bradley v. Bradley*, 270 Ga. 488, 512 S.E.2d 248, 249 (1999); *Lorenz v. Lorenz*, 166 Mich.App. 58, 419 N.W.2d 770, 771 (1988); *Josey v. Josey*, 291 S.C. 26, 351 S.E.2d 891, 896 (1986); *Brandriet v. Larsen*, 442 N.W.2d 455, 460 (S.D.1989); *Davis v. Fair*, 707 S.W.2d 711, 717–718 (Tex.App. 1986); *Floyd v. Floyd*, 17 Va.App. 222, 436 S.E.2d 457, 463 (1993).

its face does not preclude the state from acting.")

■ ¶ 14 We agree with this interpretation of § 152(e) and join the growing majority of jurisdictions holding that state courts may use their equitable powers to allocate the dependency exemption to noncustodial parents.[5] The primary purpose of this allocation is to maximize the income available for the support of the minor children. As the Court of Appeals of New Mexico cogently stated in *Macias* :

> We observe that courts have traditionally considered dependency exemptions as another form of financial resource to be allocated for the benefit of the minor children. Allocating a dependency exemption to one parent or the other may, as a practical matter, liberate additional funds with which that parent may contribute more to the support and maintenance of the children. For example, if the non-custodial parent enjoys a significantly higher tax bracket than the custodial parent, then awarding the dependency exemption to the non-custodial parent may result in larger tax savings to the non-custodial parent than if the exemption were taken by the lower-income, custodial parent. A court can then route that tax savings into greater support for the children, because increased tax savings will mean increased financial resources that can be utilized for the children's benefit. In theory, as well as in practice, allocating the dependency exemptions can serve a constructive purpose that in every way conforms to the core responsibility of [that state's] courts to provide for the minor children of divorce.

*Macias*, 968 P.2d at 817; *see also Corey*, 712 S.W.2d at 711; *Gwodz*, 560 A.2d at 87; *Hart*, 774 S.W.2d at 457; *Larsen*, 805 P.2d at 1197; *Motes*, 786 P.2d at 236. We further conclude that, where a court exercises its power to allocate the dependency exemption to the noncustodial parent, the court must order the custodial parent to execute the declaration waiving the exemption. *See, e.g., Babka*, 452 N.W.2d at 289; *Cross*, 363 S.E.2d at 458; *Pergolski*, 420 N.W.2d at 417; *Wassif*, 551 A.2d at 940. We note, however, that allocation can be conditioned upon the non-custodial parent's payment of child support. *Ritchey*, 556 N.E.2d at 1379.

¶ 15 We find support for our holding in the Pennsylvania Divorce Code. First, Section 3104(a), **Jurisdiction**, provides that in divorce matters, the trial court may "issue appropriate decrees or orders" with respect to spousal support, alimony, APL, and "[a]ny other matters pertaining to the marriage and divorce ... authorized by law and which fairly and expeditiously may be determined and disposed of in such action." 23 Pa.C.S.A. § 3104(a)(1), (a)(5). Similarly, the Divorce Code expressly authorizes the court to enter orders requiring either party to act or refrain from acting as equity and justice require. 23

---

**5.** *See In re Marriage of Larsen*, 805 P.2d 1195, 1197 (Colo.App.1991); *Serrano v. Serrano*, 213 Conn. 1, 566 A.2d 413, 417 (1989); *Ritchey v. Ritchey* 556 N.E.2d 1376, 1379 (Ind. Ct.App.1990); *In re Marriage of Rolek*, 555 N.W.2d 675, 679 (Iowa 1996); *Hart v. Hart*, 774 S.W.2d 455, 457 (Ky.Ct.App.1989); *Boudreau, supra* ; *Bailey v. Bailey*, 27 Mass.App. Ct. 502, 540 N.E.2d 187, 189 (1989); *Wassif v. Wassif*, 77 Md.App. 750, 551 A.2d 935, 940 (1989), *cert. denied*, 315 Md. 692, 556 A.2d 674 (1989); *Fudenberg v. Molstad*, 390 N.W.2d 19, 21 (Minn.Ct.App.1986); *Nichols v. Tedder*, 547 So.2d 766, 780 (Miss.1989); *Corey v. Corey*, 712 S.W.2d 708, 711 (Mo.Ct. App.1986); *In re Marriage of Milesnick*, 235 Mont. 88, 765 P.2d 751, 754–755 (1988); *Babka v. Babka*, 234 Neb. 674, 452 N.W.2d 286, 289 (Neb.1990); *Macias, supra* ; *Cohen v. Cohen*, 100 N.C.App. 334, 396 S.E.2d 344, 348 (1990); *Fleck v. Fleck*, 427 N.W.2d 355, 359 (N.D.1988); *Gwodz v. Gwodz*, 234 N.J.Super. 56, 560 A.2d 85, 87 (1989); *Hughes v. Hughes*, 35 Ohio St.3d 165, 518 N.E.2d 1213, 1215 (1988); *Lamb v. Lamb*, 848 P.2d 582, 583 (Okla.Ct.App.1992); *Hay and Hay*, 119 Or.App. 372, 850 P.2d 410, 411 (1993); *Motes v. Motes*, 786 P.2d 232, 236 (Utah Ct.App. 1989), *cert. denied*, 795 P.2d 1138 (Utah 1990); *In re Marriage of Peacock*, 54 Wash. App. 12, 771 P.2d 767, 769 (1989); *Cross, supra* ; *Pergolski v. Pergolski*, 143 Wis.2d 166, 420 N.W.2d 414, 417 (Wis.Ct.App.1988).

Pa.C.S.A. § 3323(f).[6] The Divorce Code "establishes a 'comprehensive scheme for the dissolution of marriage, the distribution of marital property and the resolution of related economic claims.'". *Perlberger v. Perlberger*, 426 Pa.Super. 245, 626 A.2d 1186, 1200 (1993), *appeal denied*, 536 Pa. 628, 637 A.2d 289 (1993), quoting *Bacchetta v. Bacchetta*, 498 Pa. 227, 235, 445 A.2d 1194, 1198 (1982).

¶ 16 Finally, the Divorce Code states that it is the policy of this Commonwealth to, among other things:

(4) Mitigate the harm to the spouses and their children caused by the legal dissolution of the marriage.

(5) Seek causes rather than symptoms of .family disintegration and cooperate with and utilize the resources available to deal with family problems.

(6) Effectuate economic justice between parties who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the parties and insure a fair and just determination and settlement of their property rights.

23 Pa.C.S.A. § 3102(a)(4)-(6).

¶ 17 For the reasons set forth above, we find that the dependency exemption is an economic claim related to the divorce, and that the trial court may fairly and expeditiously resolve this claim during divorce proceedings. Because the exemption will generally reduce a noncustodial parent's tax liability and thereby increase the income available for support, we find that awarding the exemption to that parent in appropriate cases will further the purposes and policies of the Divorce Code. *See Holland v. Holland*, 444 Pa.Super. 251, 663 A.2d 768, 770 (1995) (because of tax implications, fact-finder can allocate support award under Pa.R.C.P.1910.16–5(f) between spousal support and child support to maximize total income available for the family unit). In other words, such an allocation is one method, among many, to effectuate economic justice for the parties and the children. Accordingly, we hold that under the Divorce Code, the trial court had the authority to allocate the exemption and to direct the custodial parent to execute the required waiver. *See Perlberger*, 626 A.2d at 1200 (divorce court had jurisdiction in equitable distribution proceeding to order wife to return monies she removed from custodial account for children's support).

¶ 18 In the instant case, the dependency exemption will reduce Appellant's net income and thereby increase his income available for child support.[7] We remand for further proceedings in order for the trial court to determine, in its discretion, whether or not it is appropriate to allocate the exemption Appellant seeks, given the overall scheme of APL and child support

---

6. Section 3323(f) reads as follows:
   (f) **Equity power and jurisdiction of the court.**—In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved with or concerned with the disposition of the cause.

7. The trial court noted that the exemptions were worth more to Appellant who is in a higher tax bracket. Specifically, two exemptions were worth $795 to Wife ($2,650 × .15% × 2), and a maximum of $1,908 to Appellant ($2,650 × .36% × 2). The court properly noted that the personal exemption began to phase out for Appellant at an Adjusted Gross Income of $90,900 with his status as married filing separately, and at $121,200 in 1998 with his status as a single taxpayer. We note that Appellant sought the exemption not to increase the amount of money available for child support, but rather because he thought that he could claim head of household status (and thus a more favorable tax bracket) with the exemption. Trial Court Opinion, 11/19/98.

in this case.[8]

¶ 19 We now turn to Appellant's remaining issues. Appellant argues that when deciding the issue of equitable distribution, the court erred by failing to rule that Wife constructively received $12,455 in "rental value" on the marital home, $2,788 in mortgage foreclosure expenses, and $1,216 in home equity expenses. Specifically, he claims that Wife constructively received these sums because she lived in the marital home from February 1997 until July 1997 without paying the mortgage, second mortgage, related real estate tax payments, or fees and costs associated with the sale of the home in July 1997. Appellant's Brief at 21–26.

> Our scope of review in equitable distribution matters is limited. It is well established that absent an abuse of discretion on the part of the trial court, we will not reverse an award of equitable distribution. When reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate justice and we will find an abuse of discretion only if the trial court has misapplied the law or failed to follow proper legal procedures. The finder of fact is entitled to weigh the evidence presented and assess its credibility. The fact finder is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below.

*Gaydos v. Gaydos*, 693 A.2d 1368, 1371 (Pa.Super.1997) (*en banc*) (citations omitted). "In determining whether a court has abused its discretion, we do not usurp the trial court's duty as finder of fact. The trial court's findings, if supported by credible evidence, are binding upon a reviewing court and will be followed." *Perlberger* 626 A.2d at 1196. An abuse of discretion

must be established by clear and convincing evidence. *Id.* at 1197.

¶ 20 An award of housing costs is not mandatory, but rather is left to the sound discretion of the trial court. *Gaydos*, 693 A.2d at 1378. It is not an abuse of discretion to refuse to award housing costs so long as the equitable distribution award as a whole is appropriate under the totality of the circumstances. *Id.*

¶ 21 The trial court reasoned that Wife could not have afforded to make the payments from February 1997 to July 1997 because Appellant failed to make timely child support or APL payments. Trial Court Opinion, 11/19/98, at 2; Trial Court Opinion, 2/5/99, at 4–5. Specifically, the court found that Wife received her first child support payment in April 1997 and her first APL payment in June 1997. *Id.*

¶ 22 In response, Appellant claims that Wife should have been charged with at least some (unspecified) **portion** of housing costs because: (1) she received money from sources other than child support and APL; (2) she could have had additional funds available if she had sought employment; (3) Appellant repeatedly offered to bring the mortgage current in lieu of APL for March, April, and May 1997; and (4) Wife could have paid at least a portion of her housing expenses with the child support and APL proceeds she received. Appellant's Brief at 21–25.

¶ 23 In this case, the record fails to demonstrate that the court misapplied the law or failed to follow proper legal procedures when it did not charge Wife with a portion of these housing costs, because such action is not mandatory. An abuse of discretion for failing to charge housing costs occurs if the equitable distribution award **as a whole** is inappropriate.

---

8. We note that a transfer of the dependency exemption from one party to the other (or a change in the number of exemptions) may, in appropriate cases, form the basis for a petition to modify child support. We also note that because the value of dependency exemp-

tions will vary with the exemption-holder's income, an order allocating the dependency exemption should be modifiable upon a showing of a change in circumstances, such as a significant increase or decrease in the income of the exemption-holder.

*Gaydos*, 693 A.2d at 1378. As noted *infra* with respect to Appellant's remaining issues on appeal, Appellant has failed to make such a showing. Accordingly, we reject Appellant's second claim.

¶ 24 Next, Appellant argues that the court abused its discretion for failing to rule that Wife constructively received $5,949.20 in insurance proceeds following an auto accident. In constructing an equitable distribution award, the court has broad powers to effectuate economic justice. *Gaydos*, 693 A.2d at 1371. We will reverse only for an abuse of discretion. *Id.*

¶ 25 The court charged Wife with receiving a 1992 Ford Taurus in equitable distribution. Trial Court Opinion, 2/5/99, at 5. After an auto accident, the car was totaled. *Id.* The cost of repair was $6,449.20. *Id.* Wife received an insurance check for $5,949.20 (the cost of repair less a $500 deductible). *Id.* The court "found it inequitable to charge Wife with receipt of the insurance proceeds for the totaled automobile and at the same time assess her the fair market value of the same automobile." *Id.* at 5–6. Appellant does not dispute that Wife used the proceeds to repair the car. Rather, he argues that the check was issued in the joint names of the parties, and that Wife inappropriately, surreptitiously, and illegally deposited the check to her separate bank account. Appellant's Brief at 26–28.

¶ 26 Arguments that are not appropriately developed by citation to authority are waived. *Korn v. Epstein*, 727 A.2d 1130, 1135 (Pa.Super.1999). "It is the Appellant who has the burden of establishing his entitlement to relief by showing that the ruling of the trial court is erroneous under the evidence or the law." *Id.*

¶ 27 Assuming (without deciding) that Wife's negotiation of the check was inappropriate, Appellant has failed to cite authority for the proposition that this fact is relevant to these proceedings.[9] As such, the issue is waived. *Korn*, 727 A.2d at 1135. Moreover, as Appellant apparently concedes, the insurance proceeds served to make whole an asset Wife had received in equitable distribution. Appellant has failed to demonstrate that the court abused its discretion when the court refused to charge Wife with receipt of the insurance proceeds.

¶ 28 Next, Appellant argues that when the court calculated alimony, the court erred in failing to consider Wife's marital misconduct, and its effect on Appellant's health and employment status. Appellant alleges that Wife committed marital misconduct by pursuing a romantic relationship with another man, Don Owens (D.O.), during the marriage. Appellant's Brief at 28–33.

¶ 29 Under § 3701(b) of the Divorce Code, "in determining whether alimony is necessary and in determining the nature, amount, duration, and manner of payment of alimony, the court shall consider all relevant factors," including seventeen enumerated factors. 23 Pa.C.S.A. § 3701(b). One of these seventeen factors is "the marital misconduct of either of the parties during the marriage." 23 Pa. C.S.A. § 3701(b)(14). Under this subsection, "the marital misconduct of either of the parties from the date of final separation shall not be considered by the court" with the exception of abuse. *Id.*; *Perlberger*, 626 A.2d at 1195. The purpose of alimony is not to reward one party and punish the other, but rather to ensure that the reasonable needs of the person who is unable to support herself through appropriate employment are met. *Jayne v.*

---

9. " '[T]he vindication of private rights or the punishment of matrimonial wrongs' is expressly proscribed in the Divorce Code's legislative findings and intent." *Perlberger*, 626 A.2d at 1195, citing 23 Pa.C.S.A. § 3102(a)(3).

These divorce proceedings are an inappropriate forum in which to attempt to vindicate this alleged private wrong respecting Wife's negotiation of the check.

*Jayne*, 443 Pa.Super. 664, 663 A.2d 169, 174 (1995). We will not reverse an award of alimony absent an abuse of discretion or insufficient evidence to support the award. *Id.*

¶ 30 The parties agree that Wife met D.O. in August 1996, and that Wife and Appellant separated on December 26, 1996. Trial Court Opinion, 2/5/99, at 17. The court found that "the issue of marital misconduct involves the time period between August 1996 and December 26, 1996 only." *Id.* The court noted that D.O. and Wife had only one meeting during this time frame, a lunch together on December 23, 1996. *Id.* at 18.

¶ 31 The court found that during this time, Wife was attracted to D.O. but that she "had not taken any definite steps to extend the relationship to a romantic relationship." *Id.* at 17–18; *see also* Trial Court Opinion, 11/19/98, at 4 (correspondence between Wife and D.O. "demonstrated an attraction … but nothing that could be considered improper"). The court found that Wife was considering a relationship with D.O. at the time of the separation, "but there was no evidence that she had taken any verbal or physical step to begin such relationship prior to the separation." Trial Court Opinion, 11/19/98, at 4. The court concluded that "any minimal marital misconduct between August 1996 and December 26, 1996 was not significant." Trial Court Opinion, 2/5/99, at 18; *see also* Trial Court Opinion, 11/19/98, at 5 (same).

¶ 32 Finally, the court considered the effect that this relationship had on Appellant's health and employment status. Specifically, the court concluded that the separation was painful, but that Appellant "has gone on with his life to the extent that he socializes with other women." *Id.* Finally, the court found "unconvincing" Appellant's claim that his employment status has been adversely affected. *Id.*

¶ 33 Appellant argues that the court abused its discretion by failing to construe in Appellant's favor the evidence regarding Wife's alleged marital misconduct. Appellant's Brief at 28–33. Again, Appellant fails to take into account our deferential standard of review. "The finder of fact is entitled to weigh the evidence presented and assess its credibility. The fact finder is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below." *Gaydos*, 693 A.2d at 1371. "In determining whether a court has abused its discretion, we do not usurp the trial court's duty as finder of fact. The trial court's findings, if supported by credible evidence, are binding upon a reviewing court and will be followed." *Perlberger*, 626 A.2d at 1196.

¶ 34 The trial court, as the finder of fact, determined that Wife's marital misconduct, if any, was minimal and that its effect on Appellant's health and employment status was not so significant as to warrant a change in the amount of alimony awarded. Trial Court Opinion, 2/5/99, at 17–18. Because the trial court's conclusions were based on an assessment of the credibility of the witnesses, we are not in a position to overturn these conclusions on appeal. Appellant has failed to demonstrate his claim.

¶ 35 Next, Appellant argues that the court erred by awarding 60% of the marital estate to Wife because the court "seemed to focus only on one factor in its memorandum opinion, that being the current income levels of the parties." Appellant's Brief at 33.[10] In a related claim, Appellant argues that the trial court "failed to consider" the following factors when deciding equitable distribution: (1) Wife's constructive receipt of the rental value of the home, as discussed *supra;* (2) the pension ramifications of the fact that Appellant is five years older than Wife; (3)

10. In the heading of this section of his Brief, Appellant also asserts that the court "refused to permit testimony from Wife on plans to remarry." Appellant's Brief at 33. Appellant

fails to develop this contention in the body of his Brief. As such, any claim related thereto is waived. *Korn*, 727 A.2d at 1135.

the separate tax liability of Appellant, as discussed *supra;* (4) Appellant's pre-marital contribution of $16,000 to the marital estate for the purchase of a home; (5) the fact· that Appellant's pre-marital pension was rolled over during the marriage, creating a significant contribution to the marital estate; (6) the fact that Wife did not contribute appreciably to the rise of Appellant's career by sacrificing her own career aspirations; and (7) Appellant's "additional work contribution in·putting in 12 and 15 hour days." Appellant's Brief at 33–35.

¶ 36 We need not discuss this claim in detail, because the premises of Appellant's argument are not supported by the record. The trial court specifically stated that it divided the marital estate 60%–40% based on a "number of factors," not just the parties' relative earning capacity. Trial Court Opinion, 11/19/98, at 2; Trial Court Opinion, 2/5/99, at 6–7. Specifically, the court considered, *inter alia,* "the value of husband's separate assets, wife's responsibilities as primary custodian of the two minor children, and the ability of Husband to acquire assets and income in the future." *Id.* Next, the trial court did specifically consider, in detail, the first five issues raised by Appellant. Trial Court Opinion, 2/5/99, at 7–13. As to the remaining two issues, Appellant fails to explain how these factors have any separate monetary value which has not already been included in the court's overall assessment of equitable distribution. So far as can be discerned from the record, the court adequately took into account all of the factors mentioned by Appellant. Accordingly, we reject this claim.

¶ 37 Next, Appellant argues that the court erred by estimating Wife's earning capacity at $2,000 per month. The court noted that Wife's last full-time job, as a billing specialist for an insurance company, ended over ten years ago. Trial Court Opinion, 2/5/99, at 16. The court credited Appellant's testimony that an entry level position comparable to the position Wife held ten years ago would earn

$27,840. *Id.,* citing N.T., 4/8/98, at 144. The court found that it would be unrealistic to conclude that Wife could earn more than an entry-level position after having been out of the workforce for ten years. Trial Court Opinion, 2/5/99, at 17. As with his discussion of marital misconduct, Appellant ignores our standard of review and simply argues that the court should have credited testimony in the record tending to show that Wife had a higher earning capacity. Appellant's Brief at 35–36.

¶ 38 "The finder of fact is entitled to weigh the evidence presented and assess its credibility. The fact finder is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below." *Gaydos,* 693 A.2d at 1371. Because the court's conclusions are reasonable and supported by evidence in the record, we will not substitute our judgment for that of the trial court. *Perlberger,* 626 A.2d at 1204. We reject this claim.

¶ 39 Next, Appellant argues that the court erred by awarding $5,000 in counsel fees to Wife. Appellant's Brief at 36. Specifically, Appellant argues that the court abused its discretion by failing to take into account the fact that Wife has significantly more liquid assets than Appellant, and that Appellant's child support and alimony payments eliminate "any real income advantage for a very long time." *Id.* at 37.

¶ 40 An award of counsel fees is warranted when it will promote the fair administration of justice by enabling the dependent spouse to maintain or defend the case without being placed at a financial disadvantage. *Perlberger,* 626 A.2d at 1206. Counsel fees are awarded based on a review of all relevant factors, including the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution. *Id.* at 1207. We review a court's award of coun-

sel fees for an abuse of discretion. *Id.* at 1206.

¶ 41 The court noted that each party had sustained approximately $20,000 in counsel fees "because both parties and counsel could not resolve most issues short of a court order." Trial Court Opinion, 2/5/99, at 19. The court noted that the parties have approximately the same value of **assets** through equitable distribution, but that "it is in the **income** category that [Appellant] has significantly more resources than Wife. He can afford to pay $5,000 towards Wife's counsel fees at the time of final distribution." *Id.* at 23, emphasis added. Finally, the court astutely noted that the counsel fee award would, in all likelihood, be significantly depleted by this appeal. *Id.*

¶ 42 As with his previous issues on appeal, Appellant ignores the trial court's findings of fact and simply reargues his interpretation of the evidence. The record reflects that the court considered all relevant factors, and that the court's decision is reasonable and supported by evidence in the record.[11] Accordingly, we reject this claim.

¶ 43 Finally, Wife asks that we remand the case for an award of additional counsel fees connected with this appeal. Wife's Brief at 34. Similarly, the trial court noted that we "may wish to consider" such a remand in order to assess fees and costs incurred by Wife in defending this appeal. Trial Court Opinion, 2/5/99, at 23.

¶ 44 Our Rules of Appellate Procedure allow for the imposition of damages (in addition to standard fees and costs) as follows:

> [A]n appellate court may award as further costs damages as may be just, including
>
> (1) a reasonable counsel fee and
>
> (2) damages for delay at the rate of 6% per annum in addition to legal interest,

if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

Pa.R.A.P. 2744. We find that Appellant has raised a nonfrivolous issue. For this reason, we further hold that the appeal was not taken solely for delay, and that Appellant's conduct cannot be described as dilatory, obdurate or vexatious. We decline to assess fees and costs.

¶ 45 Remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

---

11. Appellant does not dispute the trial court's conclusion that Appellant earns considerably more through employment than Wife.