J-A05024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| WATERBUCKET MEDIA, LLC, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NATIONAL HIGH SCHOOL COACHES ASSOCIATION, INC., (NHSCA) | |
| Appellant | No. 1673 EDA 2014 |

Appeal from the Order entered April 30, 2014,
in the Court of Common Pleas of Northampton County,
Civil Division, at No(s): C48-CV2011-11686

BEFORE:  GANTMAN, P.J., SHOGAN, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:                          **FILED MARCH 09, 2015**

National High School Coaches Association, Inc., ("Appellant"), appeals from the trial court's denial of Appellant's post-trial motion seeking judgment notwithstanding the verdict ("JNOV"), or alternatively, a new trial following the entry of judgment in favor of Waterbucket Media, LLC, ("WBM"), and against Appellant, following a jury trial verdict in favor of WBM.  We affirm.

The trial court detailed the factual procedural history of this case as follows:

> [WBM] commenced the instant action by filing a Complaint on December 7, 2011.  In its Complaint, [WBM] asserted a breach of contract claim against [Appellant] for the amount of $180,768.13.  On January 6, 2012, [Appellant] filed an Answer with New Matter and Counterclaim.  [Appellant's] Counterclaim purportedly contained a breach of contract claim against [WBM].  On January 19, 2012, [WBM] filed a Reply to [Appellant's] New Matter and an Answer to its Counterclaim.

A jury trial was held from November 18, 2013, through November 20, 2013. On November 20, 2013, upon oral motion of [WBM], the Court entered a compulsory nonsuit with respect to [Appellant's] breach of contract Counterclaim. (N.T., 11/20/2013, at 51:7-64:21.) Also, on November 20, 2013, the jury entered a verdict in favor of [WBM] and against [Appellant] and awarded [WBM] damages in the amount of $77,500.00. (*Id*. at 197:6-18.)

On November 29, 2013, [Appellant] filed [a post-trial motion]. In its Motion, [Appellant] alleges that (1) the Court erred in entering the compulsory nonsuit on [Appellant's] Counterclaim; (2) the jury awarded damages to [WBM] based on a misinterpretation of the parties contract; and (3) [WBM] lacked standing to bring an action against [Appellant]. [Appellant's] Motion requests that the Court order a new trial, or, in the alternative, "rule that [WBM] ... is not entitled to commissions for unpaid sponsorships or that [WBM] ... is not entitled to post [] May 2011 payments at all." (Mot. at 5-6).

The evidence presented at trial established the following. [WBM] was formed in January 2009 by James Jennings ("Jennings"), who is the sole member of the limited liability company. (N.T., 11/18/2013, at 608-16, 61:22-62:8.) [WBM] is a sports marketing firm that provides public relations and sponsorships to its clients. (*Id*. at 61:22-62:1.) [Appellant] is a nonprofit association that, *inter alia*, runs national sporting events for high school athletes and provides education to high school sports coaches. (N.T., 11/19/2013, at 25:9-19.)

In 2009, [WBM] and [Appellant] entered into a one-year agreement in which [Appellant] contracted with [WBM] to provide public relations and to obtain sponsorships. (N.T., 11/18/2013, at 66:10-67:3.) When that agreement expired, [WBM] and [Appellant] entered into a new written agreement. [WBM's] Ex. 1.) The new agreement, which was drafted by Robert Ferraro ("Ferraro"), [Appellant's] executive director, and commenced its effective term on June 1, 2010, was titled "[Appellant/WBM] Media Working Agreement" ("Working Agreement"). (N.T., 11/18/2013, at 67:14-68:14; [WBM's] Ex. 1.) Ferraro signed the Working Agreement on behalf of [Appellant]. (N.T., 11/18/202, at 68:5-11.) While the copy of the Working Agreement introduced into evidence was unsigned by Jennings, Jennings did sign the agreement on behalf of [WBM]. (*Id*. at 69:2-21.)

The Working Agreement was effective for two years. ([WBM's] Ex. 1 at 1.) Pursuant to its terms, [Appellant] was required to pay [WBM] a monthly fee of $2,500.00 for public relations work. (*Id*. at 4.) Further, [Appellant] was required to pay [WBM] twenty percent of the net value of cash sponsorships and ten percent of the value or any "costs savings" obtained by [WBM] for [Appellant]. (*Id*.) The pertinent language contained in the Working Agreement is as follows:

2. **Advertising, Promotions, and Sales Commissions.**

[WBM] shall be entitled to a commission in the amount of Twenty Percent (20%) of the net value of cash sponsorships (monetary sponsorship) and/or revenues accrued to [Appellant] regardless of timeframe from any advertising, sponsorship, or signage revenue and/or media deal for [Appellant.]

   a. **Net Revenue Defined.** Net revenue will be defined as "out of pocket" expenses to [Appellant] associated with servicing the sponsorship relationship to be taken away from the gross revenues associated with the sponsorship. The remaining cash sponsorship will be the "net revenue" that [WBM] will be commissioned on. These costs will not include 'regular operating expenses' associated with putting on an event or any happening.

   **…**

3. **Sponshorship that provides a "cost savings" to [Appellant].** [WBM] shall be entitled to a commission in the amount of Ten Percent (10%) of the value of any cost savings to [Appellant]; unless otherwise agreed to a different percentage by both parties. Items that have existed as a budget "line item" for both [Appellant] and/or pertaining to costs to conduct [Appellant's] events will fall under this commission/compensation plan.

   a. Commission payment due within 60 days of contract execution.

*Id.* The Working Agreement contained a merger clause stating that "This Agreement contains the entire agreement of the Parties as to the subject matter hereof.

> This Agreement may be change[d] only in writing and duly executed by each of the Parties." (*Id*. at 2.)

> At trial, [WBM] presented evidence that [Appellant] had not paid all of the requisite commissions and public relations fees due under the Working Agreement. (N.T., 11/18/2013, at 59:13-119:14.) In closing argument, [WBM's] counsel contended that [Appellant] owed $134,850.00 to [WBM]. (N.T., 11/20/13, at 127:2-5.) As noted above, the jury found in favor of [WBM] on its breach of contract claim and awarded damages in the amount of $77,500.00.

Trial Court Opinion, 4/30/14, at 1-5 (footnote omitted). On April 30, 2014, the trial court denied Appellant's post-trial motions. Appellant filed a timely notice of appeal. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant poses the following queries for our review:

1. Whether the trial court incorrectly decided that the Working Agreement was ambiguous as to when commission payments were due, as both parties agree that payments were only due from net revenue?

2. Whether [WBM] is a proper party, as it did not sign the Working Agreement; received no consideration attending the Working Agreement; and was in violation of every critical tenet of law separating owners/managers of corporate structures from the corporate entity itself?

3. Whether the agreement underlying [Appellant's] counterclaim was sufficiently definite, and subject to sufficient consideration to form an actionable contract?

Appellant's Brief at 2.

We recognize:

> A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could

- 4 -

disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the jury could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*Am. Future Sys. v. Better Bus. Bureau*, 872 A.2d 1202, 1215 (Pa. Super. 2005) (citation omitted), *aff'd by* 923 A.2d 389 (Pa. 2007). Further, we will reverse a trial court's denial of a JNOV only where the trial court abused its discretion or committed an error of law that controlled the outcome of the case. *Ty-Button Tie, Inc. v. Kincel and Co., Ltd.*, 814 A.2d 685, 690 (Pa. Super. 2002).

Likewise, we are mindful that:

The decision of whether to grant a new trial is within the sound discretion of the trial court. We will not disturb the trial court's decision unless the court palpably abused its discretion or committed an error of law. [] [A] new trial is warranted where the jury's verdict is so contrary to the evidence as to shock one's sense of justice. However, a new trial should not be granted because of a mere conflict in testimony or because the trial judge, on the same facts, would have arrived at a different conclusion.

*Andrews v. Jackson*, 800 A.2d 959, 962 (Pa. Super. 2002) (quoting *Mano v. Madden*, 738 A.2d 493, 495 (Pa. Super. 1999) (*en banc*)).

Before we examine the merits of Appellant's issues, we must first determine whether they have been preserved for review. Upon review of both record and Appellant's brief, we find that Appellant's first and third issues are waived for lack of development.

In summarizing its first issue, Appellant contends that "[t]he trial court erred in its legal interpretation of the Compensation portion of the Working Agreement[.]" Appellant's Brief at 8. In support of this argument, Appellant cites to the Working Agreement and Jennings' trial testimony, and argues about how we should construe the Working Agreement. **See generally** Appellant's Brief at 11-14. However, despite recognizing that the construction of contractual language is *a question of law*, (**id.** at 11) (emphasis supplied), Appellant fails to cite a single case in support of its argument, analysis, and proposed interpretation of the Working Agreement. **See id.** at 11-14. Appellant's argument fails for lack of development with appropriate jurisprudence. **See Betz v. Erie Ins. Exchange,** 957 A.2d 1244, 1261 (Pa. Super. 2008) (internal citations omitted) (deeming an argument waived where appellant "cites no authority to support … its argument"); **see also Bombar v. West American Ins. Co.,** 932 A.2d 78, 91 (Pa. Super. 2007) (determining appellant "has not developed … argument for appellate review" where appellant only cited to pleadings).

We further find waiver in Appellant's treatment of this issue during the trial. Instantly, Appellant argues that the trial court "determined that the Working Agreement was ambiguous with respect to 'revenues accrued' and

the 'net revenue' definition that precedes commission payment." Appellant's Brief at 6. Appellant indicates that "WBM argued that 'accrual' means booking the account upon sponsorship contract signing[.] [Appellant] argued that commissions were to be paid 'only after receipt of sponsorship money, less the 'out of pocket' money referred to [in Working Agreement]." *Id.* However, Appellant's counsel conceded to the trial court that "there might be an ambiguity" regarding accrual under the contract given the parties' differing interpretations of the Working Agreement. N.T., 11/19/13, at 3. Further, Appellant did not object when the trial court specifically asked counsel, "[d]oes anyone have any objection" to the trial court's instruction that "the term accrued and how that's to be paid, are ambiguous and [the jury is] to use all of the facts, including how the parties operate under the agreement" to interpret those terms. *Id.* 169. Appellant also failed to object when the trial court reiterated: "Just so we're all clear, does anybody have an objection to me charging [the jury] that paragraph two of the agreement is ambiguous and the jury has to determine how [WBM] was to be paid?" *Id.* at 171. Moreover, during a discussion of the proposed jury instructions, the trial court specifically read the jury instruction regarding ambiguity, which concluded with the statement that "because [Appellant] prepared the written agreement, any ambiguous language in the written agreement must be interpreted against [Appellant] and in favor of [WBM] if [WBM's] interpretation is reasonable." N.T., 11/20/13, at 95. When asked whether he had any objection to the ambiguity charge, Appellant's counsel

replied that "I don't like the last part[.]" *Id.* Appellant did not object to the portion of the jury instruction where the trial court expressed "I have decided that ambiguity as to this provision exists and an issue of fact that you must decide [is] present." *Id.* at 94. Appellant's repeated failure to object to the trial court's determination concerning ambiguity effects waiver. *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1124-1125 (Pa. 2000) ("It is axiomatic that, in order to preserve an issue for review, litigants must make timely and specific objections during trial[.]")

Waiver notwithstanding, Appellant's first issue lacks merit because having decided the contract was ambiguous, the trial court did not err or abuse its discretion in having the jury interpret the contract to determine when revenues accrued and what defined net revenue. *See* N.T., 11/19/13, at 161-173; *see also Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),* 375 A.2d 1267, 1274 (Pa. 1977) (internal citations omitted) ("It has been long accepted in contract law that an ambiguous written instrument presents a question of fact for resolution by the finder-of-fact[.]").

Appellant further maintains that "[t]here is insufficient evidence to support the jury award of damages which derive from unpaid sponsorships." Appellant's Brief at 14. However, this challenge discounts that in awarding $77,500.00 to WBM, the jury may have been reaching a compromise verdict. *See* Trial Court Opinion, 4/30/14, at 5 ("In closing argument,

- 8 -

[WBM's] counsel contended that [Appellant] owed $134,850.00 to [WBM]. [T]he jury found in favor of [WBM] on its breach of contract claim and awarded damages in the amount of $77,500.00."); *see also* N.T., 11/20/13, at 182-183 (in responding to the jury's request during deliberation to "receive the list of owed amounts indicated on the foam board as written up by [WBM's counsel]," the trial court expressed "[w]hat [the jury is] trying to do is compare the numbers that [WBM] had with [prior defense exhibits], [to] come up with some kind of compromise[.]".

We have explained:

> Compromise verdicts are verdicts where the fact-finder is in doubt as to the defendant's liability *vis á vis* the plaintiff's actions in a given suit but, nevertheless, returns a verdict for the plaintiff in a lesser amount than it would have if it was free from doubt. Compromise verdicts are favored in the law. Although more commonplace in negligence cases tried before juries, such verdicts are equally appropriate in contract cases tried before the bench.

*Morin v. Brassington*, 871 A.2d 844, 852-853 (Pa. Super. 2005). In *Morin*, we declined to reweigh the evidence on appeal in a breach of oral contract action, and affirmed the trial court's verdict in plaintiff's favor despite incredible accusations made by both parties regarding the actual existence of the agreement. *Id.* The *Morin* court ruled it "[would] not invade the credibility-determining powers of the fact-finder merely because the evidence was conflicting and the fact-finder could have decided the case either way." *Id.* at 852.

Further, we recognize that "it is within the province of the jury to assess the worth of the testimony, which it may then accept or reject. We agree that the jury is free to believe all, some or none of the testimony presented by a witness." *Neison v. Heimes,* 653 A.2d 634, 636-37 (Pa. 1995) (internal citations omitted).

Instantly, the record does not reflect that the verdict defies common sense and logic such that a new trial is warranted, nor does the record viewed in the light most favorable to WBM as the prevailing party, entitle Appellant to JNOV. Accordingly, Appellant's first issue is unavailing.

We also find waiver with Appellant's third issue. Appellant challenges the trial court's grant of a compulsory nonsuit in WBM's favor, and against Appellant, regarding Appellant's counterclaim against WMB. *See* Appellant's Brief at 24. Appellant's entire argument consists of a single paragraph under the heading "[Appellant's] Counterclaim." *Id.* In this single paragraph, Appellant baldly asserts that "[m]uch discussion of [Appellant's] counterclaim has taken place above, and will not be reiterated here." *Id.* Appellant discounts that it is not our duty to comb Appellant's brief to cobble together and infer Appellant's position and argument, and we decline Appellant's exhortation for us to do so. *See Commonwealth v. Hakala*, 900 A.2d 404, 407 (Pa. Super. 2006); *see also Miller v. Miller*, 744 A.2d 778, 788 (Pa. Super. 1999) (internal citation omitted) (appellant bears the burden of establishing his entitlement to relief). Significantly, this single paragraph does not contain any binding and applicable jurisprudence. *Id.*

- 10 -

Indeed, Appellant does not even cite any legal authority for our standard and scope of review regarding a trial court's order granting a compulsory nonsuit. *Id.* Appellant's failure to develop its third issue results in waiver. *See, e.g., Giant Food Stores, LLC v. THF Silver Spring Development, L.P.,* 959 A.2d 438, 444 (Pa. Super. 2008) ("Appellant's issue on appeal is waived because [Appellant] has failed to set forth in its appellate brief any citation to legal authority pertaining to [Appellant's] argument").

Turning to Appellant's second issue, Appellant contends that the "trial court erred … in permitting WBM to be the plaintiff[.]" Appellant's Brief at 8. Appellant argues that [b]eginning in September, 2010, all checks were paid to [Jennings], and WBM received nothing. [Jennings'] actions have two net results: first, there is no consideration for WBM to be considered a party to a contract, hence no cause of action on behalf of WBM exists; and second, [Jennings'] pillaging of his company so violates the laws concerning separation of the LLC as an entity from its owner that the LLC as an entity is disregarded." *Id.* at 15-16.

The trial court astutely observed:

> "A real party in interest in any given contract or chose in action is the person who can discharge the duties created and control an action brought to enforce rights." *Craig by Boosel v. Farren*, 700 A.2d 543, 545 (Pa. Super. 1997); *see also* Pa.R.C.P. No. 2002(a). Pursuant to the Limited Liability Company Law of 1994, "suit may be brought by or against a limited liability company in its own name." 15 Pa.C.S.A. § 8991(a). However, "[a] member of a company is not a proper party to an action or proceeding by or against the company, except where the object is to enforce the right of a member against or his liability to the

company." Id. § 8991(b). [WBM] was a party, along with [Appellant], to the Working Agreement. As [Appellant] itself notes in its Brief, no evidence was presented at trial that [WBM] assigned its rights pursuant to the Working Agreement to Jennings personally. ([Appellant's] Br. at 5.) No evidence was introduced at trial that [WBM] assigned its rights under the Working Agreement to any individual or entity. Accordingly, as the only entity capable of enforcing its rights pursuant to the Working Agreement, [WBM] was a real party in interest to this action.

[Appellant] argues that Jennings' acceptance of [WBM's] payments violated corporate formalities, such as the prohibition on comingling corporate and personal funds, resulting in [WBM's] elimination as a real party in interest. The Court finds this argument perplexing and believes that its implications would logically lead to a conclusion that [Appellant] itself would be unlikely to endorse. For example, if the Court were to find that [WBM] had violated corporate formalities to such an extent so as to erase the distinction between [WBM] and Jennings individually, then payments to Jennings *were* payments to [WBM] because Jennings *would be* [WBM] and vice-versa. While [Appellant] claims that Jennings' actions demolished the corporate wall between himself personally and [WBM], [Appellant's] entire argument that [WBM] is not a real party in interest is implicitly premised upon that wall standing strong. For if [WBM] and Jennings were not distinct entities, how can the former relinquish rights to the latter? And, of course, [Appellant] acknowledges that there was no assignment from [WBM] to Jennings, thereby begging the question of how [WBM] supposedly gave up its right to payment under the Working Agreement to Jennings.

\*\*\*

Critically, and fatal to [Appellant's] argument, [Appellant] is not trying to pierce [WBM's] corporate veil in order to assert liability against Jennings. Rather, [Appellant] seeks to pierce the corporate veil in order to eliminate [WBM's] standing as a plaintiff to assert liability against [Appellant]. The Court agrees with the keen observation by [WBM] in its Post-Trial Brief that [Appellant], "in utilizing these [veil-piercing] doctrines to structure an argument that an entity should be *prevented* from asserting liability against another due to the acts of art

- 12 -

individual, . . . effectively turns these [pierce veiling] doctrines on their heads." ([WBM's] Br. at 6.)

[Appellant] was under no contractual obligation to make its payments to Jennings personally. [Appellant] agreed, with full knowledge and understanding, to change the payee. Accordingly, there was no fraudulent or deceitful conduct by Jennings or [WBM] such that justice would require the Court to pierce the corporate veil. Further, [WBM] did not seek to recover for itself any payments [Appellant] made to Jennings personally. In other words, [WBM] did not pursue any double recovery in this action.

The Court notes that, in the same breath that [Appellant] argues that [WBM] does not have standing to enforce the Working Agreement, [Appellant] also claims that [WBM] did not assign its rights to Jennings. ([Appellant's] Br. at 5.) The Court can only infer, from this argument, that [Appellant] believes *that there exists no individual or entity capable* of enforcing [WBM's]s rights pursuant to the Working Agreement. The Court rejects this inference. For all of the above reasons, [WBM] had standing to maintain its cause of action against [Appellant], and, therefore, [Appellant's] [standing] issue is without merit.

Trial Court Opinion, 4/30/14, at 13-17 (footnote omitted).

We agree with the trial court's rationale, which is supported by our review of the record and applicable jurisprudence, such that further commentary would be redundant. Appellant recognizes "[t]he issue presented by [Appellant] here differs from better known scenarios, such as piercing the corporate veil. There are no case[s] directly on point for this issue[.]" Appellant's Brief at 17. Discerning no trial court error of law or abuse of discretion, we affirm the trial court's determination that WBM had standing to sue, such that Appellant is not entitled to a new trial or a JNOV.

In sum, Appellant's three issues are without merit, such that we affirm the trial court. Order affirmed.

- 13 -

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/9/2015</u>