J-S41014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MAGDALENA CEBALLOS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| YOHENDY CEBALLOS-RAMOS, | |
| Appellant | No. 2619 EDA 2015 |

Appeal from the Order Entered July 31, 2015
In the Court of Common Pleas of Bucks County
Civil Division at No(s): A06-09-63990-D/Q

BEFORE:  BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED AUGUST 03, 2016**

Yohendy Ceballos-Ramos (Husband) appeals from the order entered on July 31, 2015, that granted him and Magdalena Ceballos (Wife) a divorce, equitably divided the marital property and denied Wife's request for alimony, counsel fees, costs and expenses.  After review, we vacate in part and affirm in part.

In its Pa.R.A.P. 1925(a) opinion, the court set forth the following facts:

> On March 8, 2010, the Plaintiff, [Wife], filed a complaint in divorce and for alimony, child support, custody, equitable distribution of property, counsel fees, and costs against the Defendant, [Husband].  The parties were separated on March 10, 2010.  The parties have three minor children, [D.C.] (born April [], 2002), [Y.C.] (born December [], 2003), and [Y.C.] (born April [], 2010), collectively "the Children."

---

Former Justice specially assigned to the Superior Court.

. . . .

Upon consideration of the Report of the Master, along with the memoranda of law submitted by the parties and following multiple days of hearings, this Court hereby makes the following findings of fact:

1. The Dominican Unisex Hair Salon is a marital asset subject to equitable distribution and is valued at $252,650.00;

2. The undeveloped land in the Dominican Republic is a marital asset subject to equitable distribution;

3. The Alaver bank account in the Dominican Republic was closed and liquidated by Husband is a marital asset subject to equitable distribution and is valued at $11,153.26;

4. The La Vega Real bank account in the Dominican Republic is not a marital asset subject to equitable distribution;

5. The 1997 Toyota Camry which was sold by Husband, is a marital asset subject to equitable distribution and is valued at $1,600.00;

6. The escrowed down payment for the marital residence in Wife's possession, is a marital asset subject to equitable distribution and is valued at $4,300;

7. For the child dependency tax exemption, Wife may claim two children per year and Husband may claim one child per year.

8. The marital estate totals $269,703.00 plus the value of the undeveloped land in the Dominican Republic.

9. The martial estate shall be divided as 65% to Wife and 35% to Husband.

Trial Court Rule 1925(a) Opinion, 1/8/16, at 1-2 (footnotes omitted).

As a result of these findings, the court ordered Husband to pay Wife $171,006.95 in 54 monthly installments of $3,166.00 each on the fifteenth of each month. The court also determined that since these payments were the equitable distribution of the marital assets, they were not taxable to Wife and not tax-deductible to Husband; nor were they to be discharged in any bankruptcy proceeding.[1] Lastly, Wife's claims for alimony, counsel fees, costs and expenses were denied.

Husband filed a timely appeal and submitted a statement of errors complained of on appeal. He raises the following issues for our review:

> 1. Did the [t]rial [c]ourt commit an abuse of discretion and an error of law when it failed to set forth the legal reason for the award of equitable distribution and after doing so it awarded 65% of the marital estate to Wife and 35% of the marital estate to Husband when Husband earns only $50,000.00 per year and his income was reflected in the business valuation?
>
> 2. Did the [t]rial [c]ourt commit an abuse of discretion and an error of law when it [o]rdered and [d]irected that Husband "buy-out" Wife's interest in a business rather than [o]rder and [d]irect its sale when Husband is not in the financial position to pay to Wife a buy-out?
>
> 3. Did the [t]rial [c]ourt commit an abuse of discretion and an error of law when it directed that Husband's buy-out of equitable distribution was not dischargeable in bankruptcy?

_____

[1] The court further directed that the jointly owned property in the Dominican Republic should be sold and divided 65% Wife/35% Husband. Additionally, the escrowed down payment on the marital residence was awarded to Wife, and Husband was awarded the Dominican Unisex Salon, the funds in the Alaver account and the proceeds from the sale of the Toyota. **See** Rule 1925(a) Opinion.

4. Did the [t]rial [c]ourt commit an abuse of discretion and an error of law in directing that Husband is entitled to claim only one child for income tax purposes and Wife is entitled to claim two of the three children when Husband's income is higher than Wife's income?

Husband's brief at 6.

We review an equitable distribution order for an abuse of discretion. *Biese v. Biese*, 979 A.2d 892, 895 (Pa. Super. 2009).

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Id.* (internal citations and quotations omitted).

*Reber v. Reiss*, 42 A.3d 1131, 1134 (Pa. Super. 2012). Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. *Sternlicht v. Sternlicht*, 822 A.2d 732, 742 (Pa. Super. 2003), *aff'd*, 876 A.2d 904 (Pa. 2005).

With regard to Husband's first issue, he asserts that the court in its July 31, 2015 decree did not set forth the reasons for the ordered distribution or the percentage of distribution for each asset. Husband does acknowledge that the trial court rectified this error in its Rule 1925(a) Opinion and discussed the factors relating to the division of marital property as enumerated in 23 Pa.C.S. § 3502. **See also** 23 Pa.C.S. § 3506 (stating "the court shall set forth the percentage of distribution for each marital asset or group of assets and the reason for the distribution ordered"). However, Husband claims that some of the court's findings and the basis for its conclusions are not supported by evidence in the record.

Specifically, Husband argues that testimony presented at trial, which the court overlooked, shows that the hair salon was acquired in April of 2011, after the parties separated, and that he had a 50% partner. He also claims that Wife's testimony about her health issues, found relevant by the court, were not supported by any medical testimony or documentation. Further, Husband claims that no testimony was presented showing that Wife's health issues affected her earning capacity. Husband also contends that the court's emphasis on the fact that because Wife is a United States citizen, "Husband [is] able to gain continuing access to the United States," should not factor strongly in Wife's favor. Rather, he claims that "he works based upon his own education, and training as a barber." Husband's brief at 14. Thus, Husband again argues that this finding is not supported by the record. Moreover, he notes that the Master recognized that the business

provides Husband with income "as reflected in the business evaluation," and that, therefore, the value of the salon should be equally divided with 60% of the balance of the assets going to Wife. *Id.* at 15.

Following its discussion of all the relevant factors listed in section 3502, the court explained its reasoning generally as follows:

> To summarize, this Court found three factors highly compelling in Wife's favor: (1) through Wife, Husband was able to gain continuing access to the United States, and, prior to the marriage, Husband had no financial or business prospects in the Dominican Republic; (2) Wife works part-time at Produce Junction, where her hours are set based on the needs of her employers; and (3) during the course of the marriage, Husband was the wage earner, and Wife was the homemaker. All other factors either skewed slightly in Wife's favor or did not favor either party.
>
> If one considers each [of] these factors worth five percentage points each [*sic*] over the basic fifty-fifty split, the division would be 65% for Wife and 35% for Husband. Also, 65% is the average of the parties['] proposed percentages—i.e., the mean of 55% and 75% is 65%. Thus, this [c]ourt properly concluded that the martial property should be distributed 65% to Wife and 35% to Husband, and, therefore, did not commit an abuse of discretion nor an error of law. Accordingly, the first issue raised by Husband on appeal is meritless.

Rule 1925(a) Opinion at 8-9 (footnotes omitted). Moreover, the court provided an extensive discussion about the salon's acquisition, stating:

> The Dominican Unisex Hair Salon ("the Salon") is a barber shop and beauty parlor with ten barber chairs located at 605 West Marshall Street, Norristown, Montgomery County, Pennsylvania. The Salon was opened in 2007, when the marriage was still intact. Husband has been employed in the Salon since that date.
>
> In 2007, Husband had sold his business interest in his previous salon, Rainy Day People; this sale is not contradicted.

Wife testified that, while she and Husband were looking for a location to open the Salon, she had ordered materials and items for the new business. Not knowing where the new shop would be located, she had the items delivered to Rainy Day People, since Husband intended immediately to open his new business after closing his previous one. This testimony is corroborated by a receipt for the salon material[] items that were delivered to Rainy Day People.

A letter was submitted to this Court signed by Husband and notarized on October 21, 2009, stating that he purchased the business two years before and put the shop in his sister's name, because he did not have a barbershop license. The letter continues that he wanted the lease of the Salon put in his and Wife's names and reaffirms that "[t]his business never really belonged to [his sister] and for this reason [he] would like to officially make the change." During his testimony, Husband contended that he was tricked into signing this admission, that he did not understand the letter when he signed it, as he does not speak nor read English well, and that the letter was merely intended to be used to acquire health insurance for the Children. However, this [c]ourt did not find his testimony credible.

Husband also claimed that he now only owns a 50% share of the business and that the remainder of the business is owned by Dominga Antonia Solares. Husband stated that he and Solares paid $25,000.00 to his sister, Rosey Delgado, for the business, in 2011, after his separation from Wife. He added that Solares gave him $15,000.00 in cash to pay Delgado and has since contributed $17,500.00 toward improvements. Husband continued that he paid $10,000.00 to Delgado in four installments: three installments of $3,000.00, and one final payment of $1,000.00. Husband contended that the monthly profits of the business are halved between himself and Solares.

Nevertheless, in 2011, Husband filed a Schedule C tax form for the Salon, which is to be used for a sole proprietorship only. Solares does not cut hair and is not employed by the business. Husband provided no documentation to support any involvement in the Salon by Solares.

Husband also presented Delgado as a witness in an attempt to establish that the Salon was not his during the marriage but was sold to him subsequently by Delgado. This

[c]ourt also did not find Delgado's testimony to be credible. Delgado submitted no documentation, receipts, or other evidence of the sale. However, a letter signed by Husband was submitted which stated that he had Delgado sign the lease for the Salon's location. Moreover, Wife presented receipts from 2007 and 2008 for business purchases for the Salon.

The report of Husband's own expert, Joseph Egler, further indicated that the Salon was marital property. The business evaluation stated: "[The Salon] was started in 2007. Mr. Ceballos initially ran the business under his sister's name. This was done because he did not have a barber's license. In a letter dated October 21, 2009, Mr. Ceballos claimed 100 percent ownership of [the Salon].

Thus, based on the above facts, this [c]ourt found that the Salon was marital property and was purchased and controlled by Husband prior to the parties' final separation. This [c]ourt also correctly concluded that Husband has 100% ownership of the Salon, as there is no evidence to support the ownership or control of the business by Solares or anyone else.

*Id.* at 9-11 (footnotes omitted). Thus, the court's conclusion that the salon was marital property and available for distribution is supported by evidence of record.[2] Accordingly, based upon the court's findings, conclusions and credibility determinations, we conclude that Husband's first issue is without merit.

Husband's second issue concerns the court's directive that Husband pay to Wife $171,006.95 in fifty-four monthly installments to buy out Wife's

---

[2] As for Husband's argument about Wife's health and its effect on her earning capacity, as well as the impact of Wife's citizenship on Husband's ability to remain in the United States, Husband did not include these issues in his Rule 1925(b) statement of errors and we resolve that they have been waived. *See* Pa.R.A.P. 1925(b)(4)(vii).

interest in the salon. He claims that he is financially incapable of making these payments and that the court should have directed that the salon be sold, not just that he buy out her interest. The court addressed this issue by stating:

> The fourth issue raised by Husband on appeal is: "Did the [t]rial [c]ourt abuse its discretion and commit an error of law in ordering Husband to buy-out Wife's interest in the Business known as Dominican Unisex Salon as the [o]rder does not provide for the sale of the business thereby compelling Husband to maintain a marital asset. Husband received "[a]ll right, title and interest" in the Salon. He may do with it whatever he wants, including sell it, provided he pays to Wife the sum of $171,006.95. He is not "compel[led] … to maintain a marital asset."

*Id.* at 13 (footnote omitted). Based upon this clarification by the court, we conclude that Husband's second issue is without merit.

Husband's third issue relates to the court's directive that Husband pay to Wife $171,006.95, as equitable distribution payments. Specifically, Husband takes issue with the court's indication that these payments cannot be discharged in any bankruptcy action. Husband relies on **Hogg v. Hogg**, 816 A.2d 314 (Pa. Super. 2002), for the proposition that a state court does "not have the authority to reaffirm [h]usband's [p]roperty [s]ettlement [a]greement based on [s]tate equitable principals where the debts have been discharged by the [b]ankrupcy [c]ourt, as the statute mandate[s] that the request to hold a debtor spouse to the obligations could be litigated only in [f]ederal [b]ankrupcy [c]ourt." Husband's brief at 16-17.

Initially, we note that the situation in *Hogg* and the one presently before us are different. In *Hogg*, we directed that the state court was without authority to "reaffirm" the husband's debts, resulting from a property settlement agreement that had previously been discharged in bankruptcy. Here, the trial court's order essentially provided that if at some future time Husband sought relief in a bankruptcy proceeding, any debts remaining that involved the sums he owed Wife as a result of the equitable distribution award could not be discharged in bankruptcy. Obviously, Husband contends that the court could not set forth such a directive. Essentially, the issue is one of jurisdiction.

The *Hogg* Court provided the following explanation:

> Traditionally, the Bankruptcy Code has protected non-debtor spouses and children by precluding discharge of a debtor spouse's alimony and support obligations. 11 U.S.C. § 523(a)(5). However, obligations of a debtor spouse that emanated from provisions of property settlement agreements not directed at support or alimony were discharged as a matter of course. But in 1994, the Bankruptcy Code was amended and a new subsection was added to address those marital obligations that were not for alimony or support, *i.e.*, debts incurred as a result of a property settlement agreement. The new provision deemed such debts *non-dischargeable* unless 1) the debtor could not afford to pay them or 2) discharging the debt would result in a benefit to the debtor that outweighed the detrimental consequences to the non-debtor spouse. 11 U.S.C. § 523(a)(15).
>
> Although § 523(a)(15) is viewed as weak protection for the non-debtor spouse, its intended purpose was to "prevent a debtor spouse from obtaining a discharge of debts arising from certain property settlement agreements." However, there are explicit procedural rules that govern § 523(a)(15), as well as jurisdictional restraints that apply to the provision. For instance,

while § 523(a)(15) offers protection to the non-debtor spouse with a settlement agreement, the Code nonetheless places the burden on the non-debtor spouse to seek the provision's protection and to do so in a specific manner. Thus, the non-debtor spouse who wishes to retain the benefit of a settlement agreement is required to raise the issue in an adversary proceeding in the Bankruptcy Court within sixty days of the first date set for the meeting of creditors. Unlike in the context of alimony and support, "the onus is on the nondebtor party to promptly raise and prevail on the issue of nondischargeability when it comes to property settlement agreement debts." Further, **only the Bankruptcy Court judge has jurisdiction to decide whether and to what extent a settlement agreement debt may be deemed nondischargeable**. This too is unlike alimony and support debts, jurisdiction over which is shared by the federal bankruptcy court and the state divorce court.

It is clear that as a result of material, substantive changes in the Bankruptcy Code, a domestic relations lawyer representing a non-debtor spouse must intervene in the debtor spouse's bankruptcy proceedings in order to represent his or her client zealously. While the prospect of entering the federal bankruptcy court maze is daunting, the new provisions set out above make the task mandatory.

*Hogg*, 816 A.2d at 318-19 (emphasis added; citations omitted). Accordingly, we are compelled to conclude that the trial court did not have jurisdiction to direct that any debts arising out of the equitable distribution award could not be discharged in bankruptcy. Thus, that portion of the trial court's order is null and void. Accordingly, Husband's third issue does have merit and the portion of the court's decree and order, stating that "[t]hese payments shall not be dischargeable in any bankruptcy action" is vacated.

Husband's last issue concerns the award of the dependency exceptions for income tax purposes. The court ordered that Wife may claim two children per year, while Husband was entitled to claim one child per year.

Husband acknowledges that pursuant to 26 U.S.C. § 152(e)(1), the parent with primary custody is entitled to claim the dependency exemption, but that a trial court may "modify that determination based upon an equitable distribution and an entry of child support." Husband's brief at 17. Husband relies on *Miller v. Miller*, 744 A.2d 778 (Pa. Super. 1999), wherein this Court held "that state courts may use their equitable powers to allocate the dependency exemption to non-custodial parent." *May v. May*, 837 A.2d 566, 569 (Pa. Super. 2003) (quoting *Miller*, 744 A.2d at 785). Moreover, the *May* opinion noted that the *Miller* Court opined that "[t]he primary purpose of this allocation is to maximize the income available for the support of the minor children." *May*, 837 A.2d at 569 (quoting *Miller*, 744 A.2d at 785).

Essentially, Husband argues that if he were awarded the dependency exemptions, his net income would increase and, therefore, more income would be available for child support. The trial court explained the basis for its determination, first noting that treasury regulation 1.152-4 relies on custody and that since Wife has primary physical custody of the Children, she would be entitled to claim all three. Thus, by allowing Husband to claim one child each year, the court reasoned that "Husband is receiving the tax exemption for one more child than he otherwise would under the standard [t]reasury [r]egulation, without this [c]ourt's intervention." Rule 1925(a) Opinion at 14. The court also explained that Husband proposed that each party should claim one child and that they should alternate claiming the

youngest child, while Wife proposed the plan that was adopted by the court. Neither party nor the trial court directed this Court to specifics relating to actual calculations of each parties' income and its availability for support. Accordingly, we conclude that the court did not abuse its discretion in awarding the exemptions as it did, and Husband has not convinced us otherwise.

Order vacated in part and affirmed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/3/2016