J-A33044-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| D.S. AND S.D.S., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellees | : | |
| | : | |
| v. | : | |
| | : | |
| A.S., | : | |
| | : | |
| Appellant | : | No. 1001 WDA 2016 |

Appeal from the Order Entered June 10, 2016
in the Court of Common Pleas of Armstrong County
Civil Division at No(s):  2014-0786-CIVIL

BEFORE:  LAZARUS, SOLANO, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED JANUARY 11, 2017**

A.S. (Mother) appeals from the order entered June 10, 2016, which modified provisions of a prior custody order that awarded D.S. and S.D.S. (Paternal Grandparents) limited partial physical custody of E.J.M.S. and E.B.S. (the Children).  Upon review, we affirm.

A.S. and D.S. (Father) were married in July 2007.  E.J.M.S. was born in May 2008, and E.B.S. was born in March 2011.  On or about March 10, 2013, Father was involved in a fatal automobile accident.  As of the time of the latest custody hearing in this matter, Mother and the Children lived in Lawrence County, Pennsylvania.

Paternal Grandparents live in Armstrong County, Pennsylvania. Mother and Paternal Grandmother have a long history of estrangement and hostility.  Although Paternal Grandparents cared for E.J.M.S. regularly after

_____
*Retired Senior Judge assigned to the Superior Court.

her birth, that arrangement ended in 2009. The Children did not see Paternal Grandparents on more than just a few occasions in 2012 and 2013, and had not seen them at all since 2013.

On June 9, 2014, Paternal Grandparents filed a complaint seeking partial custody of the Children. A custody trial was held on April 10, 2015. Following the trial, on May 29, 2015, the trial court issued a memorandum and order granting Mother sole legal and physical custody of the Children and granting Paternal Grandparents limited partial physical custody rights. Specifically, the trial court ordered that, in alternate weeks, for up to three hours each week, Paternal Grandparents were to have supervised physical custody visits with the Children at the visit coaching house established by Holy Family Institute in Kittanning, Pennsylvania. Those sessions were to continue for a period of up to three months or until the visit coach concluded in writing that such visits were futile and should cease.

Thereafter, on September 29, 2015, Paternal Grandparents filed a petition to modify custody,[1] and a custody trial was held on May 6, 2016. On June 10, 2016, the trial court issued a memorandum and order which, *inter alia*, granted Paternal Grandparents supervised visits with the Children

---

[1] Paternal Grandparents also filed a petition for special relief, stating that the court's May 29, 2015 order was unclear as to whether the visits were to terminate after the three-month period described therein and requesting that the court enter an interim order establishing partial custody of the Children pending the petition to modify. The petition for special relief was denied.

at Holy Family Institute's visit coaching house at least twice per month, for no less than three hours each, during the months of July, August, and September 2016. Thereafter, for a period of three months, Paternal Grandparents were granted one unsupervised Saturday visit with the Children on the first or second Saturday of each month. The trial court further directed that, after the second three-month period, the Saturday visits shall continue once every two months, except that Paternal Grandparents could convert any of the Saturday visits into an overnight visit from Friday to Saturday. The trial court also ordered that Paternal Grandparents have reasonable telephone communication with the Children for up to 15 minutes each week as well as email or other electronic communication should the Children desire to communicate in that manner.

On July 8, 2016, Mother timely filed a notice of appeal and a contemporaneous concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court issued its opinion pursuant to Pa.R.A.P. 1925(a) on July 11, 2016.

On appeal, Mother raises the following issues for our consideration:

I.  Did the trial court err in finding that Mother's personal animosity towards Paternal Grandmother was the cause of the lack of a relationship between the Children and their Paternal Grandparents?

II. Did the trial court err in finding that the parent-child relationship between the Children and [M]other would not be thwarted by the Children having visits with Paternal Grandparents?

- 3 -

III. Did the trial court err in finding that it was in the Children's best interest to have visits with their Paternal Grandparents?

Mother's Brief at 2 (unnecessary capitalization, emphasis, and suggested answers omitted).

We consider Mother's issues mindful of the following.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.,* 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

Relevant to this matter, 23 Pa.C.S. § 5328(c) provides:

(1) In ordering partial physical custody or supervised physical custody to a party who has standing under section 5325(1) or (2) (relating to standing for partial physical custody and supervised physical custody),[2] the court shall consider the following:

(i) the amount of personal contact between the child and the party prior to the filing of the action;

_____

[2] Subsection 5325(1) provides that "grandparents … may file an action … for partial physical custody or supervised physical custody in the following situations:  (1) where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section." 23 Pa.C.S. § 5325(1).

- 4 -

(ii) whether the award interferes with any parent-child relationship; and

(iii) whether the award is in the best interest of the child.

23 Pa.C.S. § 5328(c)(1). With respect to the best interest of the child, 23 Pa.C.S. § 5328 sets forth the factors to be considered by the court:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)   The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)   Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)  Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)  The proximity of the residences of the parties.

(12)  Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13)  The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14)  The history of drug or alcohol abuse of a party or member of a party's household.

(15)  The mental and physical condition of a party or member of a party's household.

(16)  Any other relevant factor.

23 Pa.C.S. § 5328(a). Moreover, "[u]pon petition, a court may modify a custody order to serve the best interest of the child." 23 Pa.C.S. § 5338.

In her first issue, Mother argues that the trial court erred in finding that her personal animosity toward Paternal Grandmother was the cause of the lack of a relationship between the Children and the Paternal

Grandparents. Mother's Brief at 5. Mother argues that this finding "simply defies what the parties testified to," as the testimony of the witnesses in this case shows that the relationship between Mother and Paternal Grandmother has been strained for some time. *Id.* at 7-8.

In considering "the amount of personal contact between the child and the party prior to the filing of the action" pursuant to subsection 5328(c)(1)(i), the trial court reasoned as follows:

> Since the court's custody order of May 29, 2015, the Children have had seven multiple-hour visits with Paternal Grandparents that overall went very well. The Children, despite Mother's best efforts to the contrary, have come to understand who Paternal Grandparents are and their relationship with the Children's deceased father, and have developed some degree of a familial bond with them. Before the initiation of the visits in July 2015, the Children had not had any contact with Paternal Grandparents in over two years. Prior to their father's death, they saw them on occasion, usually at family functions or holidays. The historical lack of relationship is due partly, if not chiefly, to Mother's personal animosity toward Paternal Grandmother.

Trial Court Opinion (TCO), 6/10/2016, at 7 (unnecessary capitalization omitted).

The testimony from the custody trials held April 10, 2015, and May 6, 2016, reveals the following. In testifying to her strained relationship with Mother, Paternal Grandmother explained that there were times when Mother would not allow her to see the Children and that Father would sneak the

Children to see Paternal Grandparents.[3]  N.T., 4/10/2015, at 8, 13, 23; N.T., 5/6/2016, at 34, 36.  Paternal Grandmother testified that there were also times that Father would visit Paternal Grandparents and Mother and the Children would remain in the car, so she would go out into the driveway to talk to the Children.  N.T., 4/10/2015, at 14-15; N.T., 5/6/2016, at 36-37.  Paternal Grandmother also testified that she has tried to have contact with the Children by contacting Mother and offering to meet them in a park or out to dinner, and Mother declined.  N.T., 4/10/2015, at 16; N.T., 5/6/2016, at 24.  Paternal Grandmother stated that when she told Mother she would have to take Mother to court, Mother stated that that was what Paternal Grandmother would have to do.  N.T., 4/10/2015, at 16-17.  Paternal Grandmother said she has tried to get along with Mother and would like to get along with her, that Mother does not want to, and that if there were not tension between her and Mother, she thinks she would be seeing the Children.  N.T., 4/10/2015, at 17, 21; N.T., 5/6/2016, at 27, 31.

Mother also testified to the "uneasy" relationship between her and Paternal Grandmother, stating that at one point, Paternal Grandmother was not allowed to visit the house unless she contacted Father prior to coming over and Father was at the home.  N.T., 4/10/2015, at 39, 54; N.T., 5/6/2016, at 46.  Mother also stated that that there was a time when

---

[3] Paternal Grandfather also testified that Paternal Grandmother was not welcome at Mother's home.  N.T., 5/6/2016, at 42.

Paternal Grandmother was never invited to her home. N.T., 5/6/2016, at 47. Mother explained that after Father died, Paternal Grandmother repeatedly asked Mother about seeing the Children, but Mother declined. N.T., 4/10/2015, at 48, 58-59. Mother admitted to staying in the car with the Children when they would go to Paternal Grandparents' home, and stated that at one point she told Paternal Grandmother, "[I]f you want to see these kids, you can take me to court." N.T., 4/10/2015, at 55, 59. Mother testified that she does not refer to Paternal Grandparents as the Children's grandparents and does not believe that it would help if she and Paternal Grandparents went to counseling. N.T., 5/6/2016, at 56, 59.

Upon review, we conclude that the record supports the trial court's finding that the lack of relationship between the Children and the Paternal Grandparents is due to Mother's personal animosity toward Paternal Grandmother. In so doing, we reiterate that, "with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." *V.B.,* 55 A.3d at 1197. Moreover, we fail to see how Mother's argument that the testimony demonstrates her relationship with Paternal Grandmother has been strained for some time has any impact on the court's finding that the lack of relationship between the Children and Paternal Grandparents is due to Mother's animosity toward Paternal Grandmother. Thus, no relief is due.

We next turn to Mother's third issue,[4] wherein she contends that the trial court erred in finding that it was in the Children's best interest to have visits with Paternal Grandparents. Mother argues that there was little to no contact between the Children and Paternal Grandparents prior to the filing of the custody action herein and that the Children have a very limited, nonsignificant relationship with the Paternal Grandparents. Mother's Brief at 9, 11. Mother contends that Paternal Grandparents failed to put forth any evidence to show that it was in the best interests of the Children to have a custody order entered. *Id.* at 9-10. Mother points out that, to the contrary, she testified that such visits were not in their best interest and that the Children, especially E.J.M.S., were experiencing severe anxiety over leaving Mother and visiting with Paternal Grandparents. *Id.* at 10. Mother contends

---

[4] In her second issue, Mother purports to argue that the trial court erred in finding that the parent-child relationship between the Children and Mother would not be thwarted by the Children having visits with Paternal Grandparents. Mother's Brief at 8. In support of her issue, however, she incorporates her argument in support of her third issue on appeal and baldly asserts that "undoubtedly, the custody order interferes with Mother's relationship with the Children, as the court noted it feared would happen in the May 2015 custody order. As set forth in Section I [*sic*] herein, the court erred when it did not find that the order would interfere with the parent/child relationship." Mother's Brief at 8 (citation and unnecessary capitalization omitted) (citing TCO, 5/29/2015, at 9.). We reject Mother's bald assertions of error. Moreover, Mother has failed to demonstrate how her arguments in support of her third issue relate in any way to the issue of whether the custody award thwarts her relationship with the Children, let alone establish that the trial court's decision in that regard was in error. Thus, Mother's undeveloped claim does not entitle her to relief. *See Miller v. Miller*, 744 A.2d 778, 788 (Pa. Super. 1999) ("It is the Appellant who has the burden of establishing his entitlement to relief by showing that the ruling of the trial court is erroneous under the evidence or the law.").

that the trial court gave no consideration to her decision and Paternal Grandparents' burden to overcome the presumption in favor of that decision and that the trial court should not infringe upon her fundamental right to raise the Children. *Id.* at 11.

First, to the extent that it relates to the best-interest-of-the-child analysis, we reject Mother's argument regarding the amount of contact between Paternal Grandparents and the Children prior to the filing of the custody action herein. In originally granting Paternal Grandparents limited partial physical custody of the Children, the trial court observed that Paternal Grandparents had little meaningful in-person contact with the Children during the years preceding the custody action. TCO, 5/29/2015, at 9. The court explained that E.B.S. had never spent any significant amount of time with them, and E.J.M.S. likely did not remember them as her grandparents. *Id.* Thus, the trial court acknowledged that reunification likely would be difficult and require ongoing supervision and counseling, further explaining that "reestablishing contact would not be based on any preexisting relationship and would require particular care and oversight to protect the Children from any further mental or psychological disruption to their lives." *Id.*

In modifying the custody arrangement in June 2016, the trial court explained that, since the entry of its original order, Paternal Grandparents had several visits with the Children that "overall went very well." TCO,

6/10/2016, at 7. The court further stated that, the Children, "despite Mother's best efforts to the contrary, have come to understand who Paternal Grandparents are and their relationship with the Children's deceased father, and have developed some degree of a familial bond with them." *Id.*

In light of the court's analysis above, we discern no abuse of discretion. Although Mother is correct that the Children did not have a significant relationship with Paternal Grandparents prior to the filing of the original custody action, the trial court considered that factor and nevertheless determined that, in light of the other factors, the award of limited partial physical custody was appropriate. In later modifying the custody arrangement, the trial court noted that the Children's relationship with Paternal Grandparents is growing as a result of the original custody award. The court's findings in this regard are supported by the record. *See* N.T., 5/6/2016, at 9, 11-12, 19 (Tricia Foster, family counselor at Holy Family Institute, testifying that the Children's visits with Paternal Grandparents went well; the Children were "naturally … a little hesitant" at first because "they hadn't seen their grandparents in quite awhile," but they "opened up relatively quickly and after that, we really didn't have any issue;" the Children first addressed Paternal Grandparents by the first names but later began to address them as "nanna" and "papa;" and Paternal Grandparents and the Children were affectionate toward one another); *id.* at 25 (Paternal Grandmother stating that the visits went great and the Children

warmed up to her); *id.* at 41 (Paternal Grandfather testifying that the visits "went real well").

Second, the trial court considered each of the sixteen factors relating to the best interests of the Children in its May 29, 2015 memorandum and determined that it was in the Children's best interest to give Paternal Grandparents limited partial physical custody of the Children. TCO, 5/29/2016, at 10-16. It further explained that

> the Children's best interests would be served, to the extent possible, by maintaining a meaningful relationship with Paternal Grandparents and Father's extended family, including his siblings. Given the abruptness and violent nature of Father's death, the Children certainly would benefit in being able to communicate and commiserate with Father's family, who can speak to the Children about who … Father was in ways that no one else would be able. In addition, it is readily apparent that, without court intervention, the Children likely will never be permitted to develop a relationship with Paternal Grandparents because of Mother's hatred of Paternal Grandmother. Given the benefits of such a relationship, together with its potential risks, we conclude that a trial period of visitation, of a limited duration each week, is the most appropriate recourse in these circumstances.

TCO, 5/29/2015, at 15-16 (unnecessary capitalization omitted).

In its June 10, 2016 memorandum, the trial court observed that its original findings in this regard "continue to be supported by the record" and thus incorporated those findings. TCO, 6/10/2016, at 8. It further observed that

> [t]he Children's need for a relationship with Paternal Grandparents and [F]ather's extended family is manifest and certainly will not occur unless this Court provides the

opportunity. Further, Mother time and again places her own vindictive and quite childish objectives above the best interests of the Children. By all accounts, that behavior has continued since the last custody hearing and will continue into the future. Not only has she prevented the Children from knowing anything about [F]ather from his extended family, but she now has also isolated the Children from her own family, including the Children's [Maternal Grandmother]. The reason for the isolation, once again, is Mother's personal hostility. Thus, custody factors 1, 4, 5, 8, and 13 all clearly militate in favor of a custody order that will permit Paternal Grandparents to have the opportunity to reestablish a relationship with the Children. As Paternal Grandparents acknowledge, such reestablishment will take time and will be helped initially by visits at the visit coaching house.

TCO, 6/10/2016, 8-9 (unnecessary capitalization omitted).

Notwithstanding Mother's testimony that visits with Paternal Grandparents were not in their best interest and that the Children were experiencing anxiety over the visits, the trial court determined that, particularly in light of Father's death and the benefits attendant to maintaining a relationship with his side of the family, awarding Paternal Grandparents limited partial physical custody of Children was in their best interest. *See* N.T., 5/6/2016, at 29-31 (Paternal Grandmother testifying about Paternal Grandparents and Father's extended family being able to provide a link for the Children to Father which, in some aspects, they would be able to do better than Mother). Moreover, the trial court determined that "any increased anxiety and anger that might follow a visit is a direct result of the strained relationship between Mother and Paternal Grandparents and not as a result of the visits themselves." TCO, 6/10/2016, at 8; *see, e.g.,* N.T.,

5/6/2016, at 10-11, 13, 19-20 (Ms. Foster testifying that, at the visits, there were occasions where the Children's behavior was "a little … rowdy … but other than that, there were no significant behavior issues from the kids;" that, for "the majority of the time" there was not any sort of reluctance of the Children to be at the visits;[5] and that, at times, the Children would "catch themselves" calling Paternal Grandparents "nanna" and "papa" and revert back to first names, giving Ms. Foster the impression that the Children did not think they were "supposed to be saying that"). Upon review, we discern no abuse of discretion in the trial court's decision.

Finally, to the extent Mother argues that the court infringed upon her fundamental right to raise the Children, giving no consideration to the presumption concerning Mother's decision as a fit parent and the Paternal Grandparents' burden to overcome the presumption in favor of that decision, our review of the record reveals that Mother did not raise any issue in this regard with the trial court below.[6] Thus, we do not consider this issue on

---

[5] Ms. Foster testified to one instance where E.J.M.S. expressed that she did not want to do the supervised visits anymore, but could not explain why when asked and returned to playing without issue, and one instance where E.J.M.S. stated that she wanted to leave, but then went back to interacting with Paternal Grandparents without any problem, "like she had a momentary, I need to say this, she said it, and then went back to playing." N.T., 5/6/2016, at 13-14.

[6] It is worth noting that, as pointed out by the trial court, Mother did not submit a memorandum as directed by the trial court following the May 6, 2016 custody trial. TCO, 7/11/2016, at 2 n.1. "[T]herefore the court was

appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Based on the foregoing, Mother has failed to establish that she is entitled to relief. Accordingly, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.



Joseph D. Seletyn, Esq.

Prothonotary

Date: 1/11/2017

---

without the benefit of a written statement of her legal position." ***Id.*** (unnecessary capitalization omitted).