J-A21012-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ALICIA M. PEREIRA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFREY P. LEITE | : | |
| | : | |
| Appellant | : | No. 679 EDA 2023 |

Appeal from the Order Entered February 15, 2023
In the Court of Common Pleas of Northampton County Domestic
Relations at No(s):  DR-0061519,
PACSES: 395117648

BEFORE:  BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED FEBRUARY 27, 2024**

Jeffrey P. Leite (Father) appeals from the order modifying the parties'
child support.  Father argues that the trial court erred in calculating Father's
earning capacity, erred in calculating the costs of childcare, and erred by
terminating the September 12, 2022 *de novo* hearing in order to remand the
matter for further proceedings before a conference officer.  We affirm.

We adopt the facts and procedural history set forth in the trial court's
opinion.  *See* Trial Ct. Op., 5/5/23, at 1-8.  Briefly, on June 12, 2019, Alicia
M. Pereira (Mother) filed a complaint for child support.  The trial court entered
a support order by agreement on February 17, 2020.  Father subsequently
filed various petitions to modify his child support obligation, which the trial
court granted.  On January 27, 2022, the Domestic Relations Section filed a
petition to review the existing support order because Father was no longer

receiving unemployment compensation benefits. The parties appeared for a support modification conference on March 21, 2022. Subsequently, on April 11, 2022, the trial court entered an interim support order which calculated Father's net earning capacity as $7,719 per month and set Father's monthly support obligation at $2,886.00.

Father filed a timely demand for a *de novo* hearing, and the trial court held a hearing on September 12, 2022. At the hearing, Father testified that his 2021 tax return reflected his total income from his former employment at which he received a salary plus sales commissions. N.T., 9/12/22, at 13, 20-24. Father stated that after his employment was terminated, he looked for a new position until December of 2021. *Id.* at 25. Around that time, Father formed a new company with a business partner, and Father works for that new company full-time. *Id.* at 26. As of the date of the hearing, Father's company had not yet generated any revenue and Father did not receive any compensation from his company. *Id.* at 28-29. Father also testified that when he and Mother were living together, they had hired an au pair to provide childcare. *Id.* at 13. At that time, none of the children were old enough to be in school full-time, but presently all three children attend school full-time. *Id.* at 12-14.

Mother testified that she did not have an au pair working for her between July 2020 and November 2021. *Id.* at 48. Mother explained that her previous au pair's contract ended in July 2020, and the new au pair that she had hired through an agency could not travel to the United States until November 2021

- 2 -

due to travel restrictions. *Id.* at 40, 49. During that time, the parties' youngest child was in enrolled in daycare. *Id.* at 48. Mother could not recall if she informed Father about the arrival of the new au pair. *Id.* at 50.

The trial court decided to remand this case back to a conference officer to make new support calculations based on the updated evidence of the parties' income (*i.e.*, a new tax return). *See id.* at 51-52; *see also* Trial Ct. Order, 10/5/22. Following that conference, the trial court entered a support order on October 14, 2022, which calculated Father's net earning capacity as $13,067 per month and set Father's monthly support obligation at $3,402.00.

Father again filed a timely demand for a *de novo* hearing. The trial court held a hearing on November 21, 2022. Mother had been present in the courthouse, but she left before the hearing began and did not return. The trial court heard oral argument, but neither party presented additional evidence.

On February 15, 2023, the trial court entered an order adopting the October 14, 2022 support order as a final order. Father filed a timely notice of appeal. Father and the trial court complied with Pa.R.A.P. 1925.

Father raises three issues for our review, which we reorder as follows:

1. Did the trial court err and abuse its discretion as it failed to allow a full *de novo* hearing on . . . September 12, 2022, as it remanded the matter to the domestic relations conference officer who subsequently entered a final order in violation of Pa.R.C.P. 1910.11?

2. Did the trial court err and abuse its discretion in the calculation of [Father's] income for the purpose of the entry of the child support order?

3. Did the trial court err and abuse its discretion in the calculation of the childcare costs, and in particular, including the costs associated with an au pair as part of the order?

Father's Brief at 5 (some formatting altered).

**Failure to Hold a Full Hearing**

In his first issue, Father argues that the trial court erred by failing to hold a full *de novo* hearing on September 12, 2022. *Id.* at 31-36. Specifically, Father claims that the trial court interrupted Father's cross-examination of Mother for a sidebar discussion with counsel. *Id.* at 32-33. Following that sidebar discussion, which was not transcribed, the trial court ended the hearing and remanded the matter to a conference officer to recalculate the parties' income. *Id.* at 33 (citing N.T., 9/12/22, at 51). Father notes that Mother failed to appear for the subsequent *de novo* hearing on November 21, 2022, and the hearing was conducted in her absence. *Id.* at 34. Father concludes that the trial court erred by ending the September 12, 2022 hearing before Father completed his cross-examination of Mother because he was not able to cross-examine her at the November 21, 2022 hearing.

Mother responds that Father waived this issue because Father consented to the trial court's remand of this matter to a conference officer for further proceedings. Mother's Brief at 13 (citing N.T. 9/12/22, at 51-52).

Before addressing the merits of this issue, we must determine whether Father has preserved this claim for review. This Court may raise this issue of waiver *sua sponte*. *See Tucker v. R.M. Tours*, 939 A.2d 343, 346 (Pa. Super. 2007). "The issue of waiver presents a question of law, and, as such,

our standard of review is *de novo* and our scope of review is plenary." ***Trigg v. Children's Hosp. of Pittsburgh of UPMC***, 229 A.3d 260, 269 (Pa. 2020) (citation omitted).

"In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue." ***Thompson v. Thompson***, 963 A.2d 474, 475-76 (Pa. Super. 2008) (citation omitted and formatting altered); ***see also*** Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"). Additionally, if a party raised an issue before the trial court, but subsequently abandoned that issue, it is waived on appeal. ***See, e.g.***, ***Commonwealth v. Leaner***, 202 A.3d 749, 765 n.3 (Pa. Super. 2019) (holding that the defendant waived his claim that the Commonwealth violated his right to a speedy trial guaranteed by the federal and state constitutions because although the defendant raised that issue in a pre-trial motion, he subsequently abandoned it and only pursued a claim that the Commonwealth had violated Pa.R.Crim.P. 600). Lastly, this Court has explained that "[a] party who has acquiesced in an order or judgment will not later be heard to challenge it." ***Miller v. Miller***, 744 A.2d 778, 783 (Pa. Super. 1999) (citation omitted).

Here, during the September 12, 2022 hearing, the trial court had the following exchange with the parties' attorneys:

THE COURT: Can I see counsel up front[?]

- 5 -

(Sidebar discussion held off the record.)

THE COURT: All right. Counsel and I interrupted what was about to happen here because my understanding with the updated -- with the updated tax return that was filed, it's going to be necessary for this matter to go back before the conference officer for a recalculation based upon the new income information.

And with that I think the issues regarding income and whether there should be any changes, if any, relevant to the current order or relevance to what the order should be is going to be reviewed when this matter is brought back.

So I think the only real main issue right now that this court has to work on or work at is the issue regarding that additional care; specifically with the au pair.

Counsel, does everybody understand and agree with that?

[Father's counsel]: I agree. If we're going back, there is no point in hearing either side's income at this point.

[Mother's counsel]: I agree with that, Judge.

N.T., 9/12/22, at 51-52 (some formatting altered).

The record reflects that Father consented to the trial court's decision to remand the matter for another support conference and that he did not object to the trial court's decision. **See id.** Therefore, Father has waived this issue on appeal. **See Miller**, 744 A.2d at 783; **see also** Pa.R.A.P. 302(a); **Thompson**, 963 A.2d at 475-76. Accordingly, Father is not entitled to relief on this claim.[1]

---

[1] We note that in his brief, Father also argues that the trial court erred by failing to require that Mother attend the November 21, 2022 hearing and by not sanctioning her for her unexcused absence. Father's Brief at 36. Father also contends that the trial court failed to comply with Pa.R.C.P. 1910.11(i), which requires the court to enter a final support order within sixty days of the
*(Footnote Continued Next Page)*

## Calculation of Father's Earning Capacity

In his second issue, Father argues that the trial court erred by calculating Father's support obligation based on his 2021 income tax return and failed to properly assess Father's earning capacity. Father's Brief at 19-24; Father's Reply Brief at 3-5. Specifically, Father contends that it was undisputed that Father lost his job in April of 2021 because of the COVID-19 pandemic, but the conference officer and the trial court calculated Father's income for support purposes using his 2021 tax return which reflects Father's salary before his employment was terminated. Father's Brief at 20-21. Father claims that the trial court failed to adjust Father's income following the termination of his employment as required by Pa.R.C.P. 1910.16-2(d)(2)(i). *Id.* at 21; Father's Reply Brief at 3-5. Father additionally argues that the trial court failed to consider all of factors set forth in Pa.R.C.P. 1910.16-2(d)(4)(ii) when assessing Father's earning capacity. Father's Brief at 21-23.

Mother responds that that it was proper for the trial court to assess an earning capacity for Father based on his prior salary because Father did not "pursue and secure [new] employment commensurate with his ability, training, and earnings history, [and] instead voluntarily chose to become a partner in a 'startup business' in December of 2021," which as of the September 12, 2022 hearing had not generated any income. Mother's Brief

---

date Father filed his written demand for a *de novo* hearing. *Id.* at 35-36. Father failed to raise these issues before the trial court or in his Rule 1925(b) statement; therefore, they are waived. *See* Pa.R.A.P. 302(a), Pa.R.A.P. 1925(b)(4)(vii).

at 5-6. Additionally, Mother contends that Father "failed to provide any credible testimony or other evidence that he could no longer earn income consistent with his 2021 federal income tax return[.]" *Id.* at 6 (formatting altered).

Our standard of review is as follows:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*Summers v. Summers*, 35 A.3d 786, 788 (Pa. Super. 2012) (citation omitted).

Additionally, this Court has explained that

this Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first[]hand.

When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, and the court is free to choose to believe all, part, or none of the evidence presented. This Court is not free to usurp the trial court's duty as the finder of fact.

*Mackay v. Mackay*, 984 A.2d 529, 533 (Pa. Super. 2009) (citations omitted and formatting altered).

- 8 -

We further note that an award of support, once in effect, may be modified via petition at any time, provided that the petitioning party demonstrates a material and substantial change in their circumstances warranting a modification. **See** 23 Pa.C.S. § 4352(a); **see also** Pa.R.C.P. 1910.19. The burden of demonstrating a "material and substantial change" rests with the moving party, and the determination of whether such change has occurred in the circumstances of the moving party rests within the trial court's discretion.

**Summers**, 35 A.3d at 788-89 (some citations omitted and formatting altered).

It is well-established that

a person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. Although a person's actual earnings usually reflect his [or her] earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings. Earning capacity is defined as the amount that a person realistically could earn under the circumstances, considering his [or her] age, health, mental and physical condition, training, and earnings history.

**Mencer v. Ruch**, 928 A.2d 294, 299 (Pa. Super. 2007) (citation omitted).

However, "[w]here a parent is fired for cause, . . . the court can consider reducing the parent's child support obligation under Rule 1910.16[-2](d)(1) if the parent establishes that he or she attempted to mitigate lost income." **Grigoruk v. Grigoruk**, 912 A.2d 311, 313 (Pa. Super. 2006) (citation omitted); **see also** Pa.R.C.P. 1910.16-2(d)(2)(i) (stating that "[t]he trier-of-fact shall adjust a party's monthly net income for substantial continuing involuntary decreases in income due to an employment situation over which

- 9 -

the party has no control, including, but not limited to, illness, lay-off, termination, or job elimination").

Rule of Civil Procedure 1910.16-2 further provides, in relevant part:

(4) *Earning Capacity.*

(i) When a party willfully fails to obtain or maintain appropriate employment, the trier-of-fact may impute to the party an income equal to the party's earning capacity.

* * *

(ii) *Factors.* In determining a party's earning capacity, the trier-of-fact shall consider the party's:

(A) child care responsibilities and expenses;

(B) assets;

(C) residence;

(D) employment and earnings history;

(E) job skills;

(F) educational attainment;

(G) literacy;

(H) age;

(I) health;

(J) criminal record and other employment barriers;

(K) record of seeking work;

(L) local job market, including the availability of employers who are willing to hire the party;

(M) local community prevailing earnings level; and

(N) other relevant factors.

Pa.R.C.P. 1910.16-2(d)(4).

Based on our review of the record, the parties' briefs, and the trial court's opinion, we affirm based on the trial court's analysis of this issue. **See** Trial Ct. Op. at 10-13.[2] Specifically, we conclude that the trial court did not abuse its discretion by using Father's 2021 tax return to calculate his income because Father failed to mitigate his lost income and instead stopped looking for a job and started a new business which, as of the September 12, 2022 hearing, had not provided Father with any income. **See Mencer**, 928 A.2d at 299; **Grigoruk**, 912 A.2d at 313. We also note that Father failed to present any evidence related to the Rule 1910.16-2(d)(4)(ii) factors to support his request to modify his child support obligation. **See Summers**, 35 A.3d at 788-89 (explaining that the party requesting modification has the burden of proof to demonstrate "a material and substantial change in their circumstances warranting a modification" (citations omitted)). Therefore, we

_____

[2] The trial court observed that at the September 12, 2022 hearing, Father's counsel indicated that he did not have any objections to the earning capacity that the conference officer assigned to him. **See** Trial Ct. Op. at 12-13 (citing N.T., 9/12/22, at 5). We disagree with the trial court to the extent the trial court suggests that Father acquiesced to earning capacity assigned to him in the February 15, 2023 order. Father's counsel was referring to the April 11, 2022 interim support order. **See** N.T., 9/12/22, at 3-5; **see also** N.T., 11/21/22, at 12 (Father's counsel indicates that he agrees with Father's earning capacity as calculated in the April 11, 2022 order). After the trial court remanded the matter for another support conference, the conference officer assessed an earning capacity for Father that was higher than the one assessed in the April 11, 2022 order. **Compare** Support Guideline Calculation Form, 10/14/22, at 1 **with** Support Guideline Calculation Form, 4/11/22, at 1.

- 11 -

discern no abuse discretion, and Father is not entitled to relief on this claim. *See id.* at 788; *Mackay*, 984 A.2d at 533.

### Calculation of Childcare Expenses

In his final issue, Father argues that the trial court erred by including au pair costs in the support order. Father's Brief at 25-30; Father's Reply Brief at 6-7. Specifically, Father contends that Mother did not present any evidence that Mother needs the au pair (or any other form of childcare) to maintain appropriate employment. Father's Brief at 26, 28. Father also claims that costs are not reasonable because Children are all attending school full-time, and Mother is employed full-time. *Id.* at 27, 29; Father's Reply Brief at 6-7. Lastly, Father contends that the trial court failed to consider that Mother failed to notify Father that she was hiring an au pair in November 2021 and failed to promptly provide Father with documentation of the expenses associated with the au pair as required by Pa.R.C.P. 1910.16-6(a). Father's Brief at 28-29.

Before addressing the merits of this issue, we must determine whether Father has preserved this claim for review. *See Tucker*, 939 A.2d at 346 (explaining that this Court may raise this issue of waiver *sua sponte*).

During the September 12, 2022 hearing, Father argued that Mother's hiring of an au pair in November 2021 was not necessary to provide childcare. *See* N.T., 9/12/22, at 5-6, 46-47. Subsequently, at the November 21, 2022 hearing, Father's counsel stated "I have no problem with childcare expenses from August 24, 2022 moving forward." N.T., 11/21/22, at 12-13; *see also*

*id.* at 14 (Father's counsel confirmed that by "childcare expenses" he was meant the cost of the au pair).[3]

Here, Father agreed with the au pair costs going forward (subject to a petition to modify based on change circumstances). *See id.* at 12-14. Therefore, Father abandoned his claims that the au pair was not a necessary childcare expense. Accordingly, Father has waived this issue on appeal. *See Leaner*, 202 A.3d at 765 n.3; *Miller*, 744 A.2d at 783; *see also* Pa.R.A.P. 302(a). Also, to the extent that Father argues that the trial court failed to consider Mother's violation of Pa.R.C.P. 1910.16-6(a), Father waived that issue because he did not raise it before the trial court. *See Thompson*, 963 A.2d at 475-76; Pa.R.A.P. 302(a).

For these reasons, we affirm the trial court's order.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/27/2024

---

[3] We note that the notes of testimony from the November 21, 2022 hearing are not included as part of the certified record, but they are included as part of Father's reproduced record. Mother did not object to the accuracy of these notes of testimony. Because "their veracity is not in dispute, we rely on the copy contained within the reproduced record." *See C.L. v. M.P.*, 255 A.3d 514, 518 n.3 (Pa. Super. 2021) (*en banc*) (citation omitted).

- 13 -

# IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
## COMMONWEALTH OF PENNSYLVANIA
### DOMESTIC RELATIONS SECTION

| | | |
|---|---|---|
| **ALICIA M. PEREIRA,** | ) | No: DR-0061519 |
| **Plaintiff** | ) | PASCES No.: 395117648 |
| v. | ) | Sup. Ct. No.: 679 EDA 2023 |
| | ) | |
| **JEFFREY P. LEITE,** | ) | |
| **Defendant** | ) | |

RECEIVED 2023 MAY -5 AM 8:33 NORTHAMPTON COUNTY, PA DOMESTIC RELATIONS SECTION

## STATEMENT PURSUANT TO
## PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a)

**AND NOW**, this 4th day of May, 2023, the Court issues the following statement pursuant to Pa.R.A.P. No. 1925(a):

### Procedural History

This matter is before the Superior Court on Defendant's appeal of our Order of Court entered on February 10, 2023.

On June 12, 2019, Plaintiff, Alicia M. Pereira, filed her Complaint for Support, seeking to establish child support for three (3) children. See Complaint, *Pereira v. Leite*, DR-0061519 (C.P. Northampton 6/12/2019). The parties were ordered to appear at a conference scheduled for July 9, 2019. The conference was subsequently rescheduled to September 10, 2019, then to September 21, 2019. On September 21, 2019, the parties and counsel appeared for the scheduled conference. See Conference Notes, *Leite*, supra. (C.P. Northampton 9/21/2019). It was noted that there were cross-filed petitions to establish paternity and support for three children, and a complaint for alimony pendente lite. *Id*. The issue of whether the parties were legally married was raised at the conference and was to be addressed at a future hearing. *Id*. The parties submitted financial information, including paystubs which were utilized to determine Defendant's

Original: Docketing
xc: Superior Court of Pennsylvania
The Honorable Abraham P. Kassis, Judge
Abele Iacobelli, Esquire
Stanley J. Margle, III, Esquire
Kathleen McGrogan-Rush, DRS Director
Amanda Slifer, DRS Office Supervisor
Md: 5/5/23 ams

1

(104)

SCANNED

support obligation. *Id.* At the time of the conference, Plaintiff submitted documentation of her daycare expenses which averaged $1,378.00 per month. *Id.* Plaintiff also submitted documentation of the annual cost for an au pair totaling $8,395.00. *Id.* Defendant objected to the cost of the day care plus the cost of the au pair. *Id.* Plaintiff noted that Defendant had agreed to the children attending the particular daycare/preschool at issue, as well as the hiring of the au pair. *Id.*

On October 3, 2019, the Honorable Paula A. Roscioli entered an Order directing that Plaintiff's Petition to Establish Paternity and Support for the three children was continued pending further hearing by the Court on the issue of paternity. See Order of Court, *Leite*, supra. (C.P. Northampton 10/3/2019). On October 8, 2019, the parties were ordered to appear at a hearing on November 4, 2019, which was subsequently continued to January 16, 2020. On January 16, 2020, the parties and counsel appeared before the Honorable John M. Morganelli for the de novo hearing. See Notes of Transcript - De Novo Hearing, January 16, 2020 ("N.T."), *Leite*, supra. (C.P. Northampton 1/11/2020). At the time of the de novo hearing, the parties placed an agreement into the record. Counsel noted that, other than the cross-filed support petitions, there was also a divorce action, docketed at Northampton County docket no. 2019-6917, as well as a declaratory judgment action, filed by the Plaintiff, Alicia Pereira, seeking to dismiss the divorce action, at Northampton County docket no. 2019-8986. N.T. at 5:1-6, 5:16-20. The parties agreed that the declaratory judgment action and the divorce action would both be withdrawn within five (5) days, and that the pending child support matter would be resolved with Defendant being responsible to pay child support in the sum of $2,747.18 per month for the support of the three children. N.T. at 6:1-16.

2

On February 17, 2020, the Honorable John M. Morganelli entered an Order, dated February 13, 2020, formalizing the agreement of the parties. See Order of Court, *Leite*, supra. (C.P. Northampton 2/17/2020). Pursuant to the Order, Plaintiff was directed to withdraw the pending declaratory judgment action within five (5) days. The Order also set Defendant's monthly support obligation at $3,0322.18, allocated $2,747.18 for basic support of the three (3) children and $275.00 on arrears. The February 13, 2020 Order took into account the cost of health insurance paid by Defendant, Defendant's responsibility for 40% of the cost of childcare, and the cost of the au pair for the children. Defendant's account was credited $13,000.00 for direct payments since the filing of the Complaint. Plaintiff was directed to notify the Domestic Relations Section (hereinafter "DRS") of any reduction in her daycare and/or au pair rate. *Id.*

On April 8, 2020, Defendant filed a Petition for Modification, seeking to decrease his support obligation. Defendant averred that the cost of childcare was no longer reasonable, and that Plaintiff refused to allow Defendant to utilize the services of the au pair. The parties were ordered to appear at a modification conference on April 17, 2020, which was subsequently continued to May 27, 2020. The parties and counsel appeared for the May 27, 2020 conference. *See,* Summary of Trier of Fact, *Leite*, supra. (C.P. Northampton 5/27/2020). Defendant reported a reduction of his salary due to the Covid-19 pandemic. *Id.* Defendant also requested that his support obligation be reduced due to Plaintiff refusing his requests to utilize the services of the au pair when he had the children. *Id.* The parties agreed to their respective incomes. *Id.* On June 1, 2020, the Honorable Paula A. Roscioli entered an Order dated May 27, 2020, setting Defendant's support obligation at $1,614.00 per month for support of the three children, allocated

3

$1,467 for basic support and $147.00 for arrears, effective April 1, 2020. See Order of Court, *Leite*, supra. (C.P. Northampton 6/1/2020). This order was based on the parties' stated mutual agreement. *Id.*

On April 30, 2021, Defendant filed a Petition for Modification, seeking to reduce his child support obligation due to his not being employed as a result of his position being eliminated. On June 17, 2021, the parties and counsel appeared at a scheduled conference. *See*, Conference Notes – June 17, 2021, *Leite*, supra. (C.P. Northampton 6/17/2021). Plaintiff reported providing insurance for the children and herself at a cost of $421.00 per month. *Id.* The total childcare expense reported at the conference was $13,476.00 annually. *Id.* The au pair expense was reported to have ended in August of 2020, due to the travel ban related to the Covid-19 pandemic. *Id.* There was a disagreement as to the need for an au pair once the travel ban was lifted, and the cost associated therewith. *Id.* Defendant reported receiving unemployment compensation benefits after his position was eliminated by his employer. *Id.*

On June 25, 2021, the Honorable Paula A. Roscioli entered an Order of Court, dated June 17, 2021, directing Defendant to pay $1,287.00 per month for support, effective April 30, 2021, allocated as $1,170.00 per month basic support for three children, and $117.00 for arrears. See Order of Court, *Leite*, supra. (C.P. Northampton 6/25/2021). Plaintiff was again required to report to DRS within 7 days any change in her daycare rate. The Order noted that it was entered on a temporary basis due to Defendant receiving unemployment benefits. *Id.* Defendant was directed to notify DRS within 7 days if his unemployment benefits terminated or he obtained employment. *Id.*

On January 27, 2022, a Petition to Review the temporary order was filed, as

4

Defendant was no longer receiving unemployment compensation benefits. The parties were ordered to appear for a modification conference on March 17, 2022. That conference was continued to March 21, 2022. At the time of the conference, Defendant reported that he was employed full time as of December 2, 2021, as the vice president of a company he had a 45% ownership interest in. See Conference Notes – March 21, 2022, *Leite*, supra. (C.P. Northampton 3/21/2022). Defendant reported that no income had been generated by the business yet. *Id.* Defendant also reported rental income from a townhome totaling $1,700.00 per month. *Id.* There was also discussion regarding the severance package he received when his position was eliminated by his prior employer, which was considered in the support calculation. *Id.* Plaintiff submitted her W-2s at the conference. *Id.* Plaintiff also reported rental income with submitted documentation. *Id.* Plaintiff reported a childcare expense for one child at the rate of $1,148.00 per month. *Id.* Plaintiff also reported that, as of December 3, 2021, she incurred an expense for an au pair of $8,695.00 annually. *Id.* Defendant disputed the au pair expense, despite having agreed to the au pair expense in the past, based upon the au pair not coming to his house when he had the children. *Id.* It was determined that Defendant should be assessed an income equal to his prior salary of $4,041.67 semi-monthly, plus the $25,000.00 severance package annualized, which would be included in his income, along with the child tax credit. See Follow-up Notes - April 11, 2022, *Leite*, supra. (C.P. Northampton 4/11/2022). Defendant was assessed an average monthly gross income of $10,333.00 and an adjusted monthly net income of $7,719.00. *Id.*

On April 13, 2022, Judge Roscioli entered an Order, dated April 11, 2022, directing Defendant to pay $2,886.00 per month for support, effective December 1, 2021,

5

allocated as $2,625 per month basic support for the three children and $261.00 per month for arrears. See Order of Court, *Leite*, supra. (C.P. Northampton 4/13/2022). Defendant was assessed an average monthly gross income of $10,333.00 and an adjusted monthly net income of $7,719.00 for support calculation purposes. Plaintiff was directed to inform DRS within 7 days if there was any decrease in her childcare/au pair costs. The Order was entered on a temporary basis. Both parties were directed to submit their 2021 federal income tax returns, along with supporting documentation, within 7 days, at which time the temporary order would be reviewed. *Id.*

On April 29, 2022, Defendant filed a written demand for a de novo hearing. A hearing was scheduled for June 6, 2022. That hearing was continued to July 25, 2022, then subsequently continued to September 12, 2022. On August 19, 2022, a contempt petition was filed against Defendant and a contempt hearing was scheduled for September 21, 2022.[1] The parties appeared before the undersigned on September 12, 2022 for the scheduled de novo hearing. In the course of the hearing, counsel for Defendant indicated that there was no issue as to the earning capacity assigned to Defendant. See Notes of Proceedings, 9/12/2022 ("N.P.") at 5:3-4, *Leite*, supra. (C.P. Northampton 3/8/2023). The primary issue was noted to be the necessity for, and the cost of, the au pair. N.P. at 5:5-8; 9:7. The parties, through counsel, developed a fifty-four (54) page record, including testimony from both parties and the submission of four (4) exhibits. See N.P. at 2.

On October 5, 2022, the undersigned entered an Order of Court, dated October 4, 2022, remanding the case back to the DRS conference officer for review of the temporary

---

[1] The contempt petition was withdrawn on September 20, 2022, upon receipt of a payment made directly to DRS.

Order of Court dated April 11, 2022, based on receipt of the parties' 2021 Federal Income Tax returns and changes in child care expenses. See Order of Court, *Leite*, supra. (C.P. Northampton 10/5/2022). On October 6, 2022, the DRS conference officer reviewed the case on remand. See Conference Notes, 10/6/2022, *Leite*, supra. (C.P. Northampton 10/6/2022). It was noted that the April 11, 2022 order remained in full force and effect for the period of 12/1/2021 through 12/31/2-21. Effective January 1, 2022, the Order was to be based on the parties' earnings and Defendant's 2021 Federal Income Tax return. *Id.* Plaintiff had submitted her W-2s and rental income listed on her Federal Tax return. *Id.* It was noted that Plaintiff previously had a childcare expense of $1,148.00 per month, but that it was stated in de novo court that this expense would no longer be taken into consideration as of August 24, 2022. The au pair expense of $8,695.00 annually would be taken into account in calculating the child support obligation. *Id.*

On October 13, 2022, Judge Roscioli entered an Order of Court dated October 6, 2022, directing Defendant to pay $3,402.00 per month for support effective August 24, 2022, allocated as $3,093.00 for basic support of 3 children and $309 per month for arrears. See Order of Court, *Leite*, supra. (C.P. Northampton 10/13/2022). For the period of December 1, 2021 through December 31, 2021, the order of Court dated April 11, 2022 remained in full force and effect. *Id.* For the period of January 1, 2022 through August 23, 2022, the Order of Court was set at $3,712.00 per month basic support for the period of time when the Plaintiff had a higher childcare expense. *Id.* Plaintiff was directed to notify DRS within 7 days of any decrease in her childcare expense. *Id.*

On October 19, 2022, Defendant filed a demand for a de novo hearing. The

7

parties were ordered to appear at a de novo hearing on November 21, 2022. On November 21, 2022, the parties appeared before the undersigned for the scheduled de novo hearing. On February 14, 2023, we filed the Order of Court, dated February 10, 2022, making the Order of October 6, 2022 final. See Order of Court, *Leite*, supra. (C.P. Northampton 2/14/2023).

On March 8, 2023, Defendant filed his Notice of Appeal from the Order dated February 10, 2023. On March 9, 2023, Defendant was directed to file a Statement of Errors Complained of on Appeal within 21 days, and comply with Pa.R.A.P. 1911 and Pa.R.J.A. 4001 through 4016 forthwith. See Order of Court, *Leite*, supra. (C.P. Northampton 3/9/2023). On March 15, 2023, Defendant filed his Statement of Errors Complained of on Appeal. In his Statement, Defendant states as follows:

1. The Trial Court erred and abused its discretion in the calculation of the Defendant, Jeffrey P. Leite's, income for the purpose of the entry of the child support Order.

2. The Trial Court erred and abused its discretion in the calculation of the childcare costs, and in particular, the costs associated with an au pair as part of the Order.

3. The Trial Court erred and abused its discretion as it failed to allow a full de novo hearing on Monday, September 12, 2022, as it remanded the matter to the Domestic Relations Conference Officer who subsequently entered a Final Order by the Court which is in violation of Pa.R.C.P. 1910.11.

See Defendant's Statement of Errors, *Leite*, supra. (C.P. Northampton 3/15/2023).

**Standard of Review**

It is well established that the Superior Court's scope of review is limited in support cases. See *Haley v. Haley*, 549 A.2d 1316, 1317 (Pa. Super. 1988). It is within the trial court's discretion to determine the amount of a support order, and its judgment

8

should not be disturbed on appeal absent a clear abuse of discretion. *Id.*, (quoting *Ritter v. Ritter*, 518 A.2d 319, 322 (Pa. Super. 1986)). "On appeal, a trial court's child support order will not be disturbed unless there is insufficient evidence to sustain it or the court abused its discretion in fashioning the award." *Id.*, (quoting *Fee v. Fee*, 496 A.2d 793, 794 (Pa. Super. 1985) (internal punctuation omitted)). The Pennsylvania Supreme Court has stated as follows:

> "Abuse of discretion" is synonymous with a failure to
> exercise a sound, reasonable, and legal discretion. It is a
> strict legal term indicating that [an] appellate court is of
> opinion that there was commission of an error of law by the
> trial court. It does not imply intentional wrong or bad faith,
> or misconduct, nor any reflection on the judge but means
> the clearly erroneous conclusion and judgment—one that is
> clearly against logic and effect of such facts as are
> presented in support of the application or against the
> reasonable and probable deductions to be drawn from the
> facts disclosed upon the hearing; and improvident exercise
> of discretion; and error of law.

*McKolanis v. McKolanis*, 644 A.2d 1256 (Pa. Super. 1994), (citing *Com. v. Powell*, 590 A.2d 1240, 1244 n.8 (Pa. 1991). A finding of abuse of discretion will be made only upon a showing of clear and convincing evidence. *Koller v. Koller*, 481 A.2d 1218 (Pa. Super. 1984). The role of an appellate Court in support proceedings is limited and a finding of abuse of discretion should not be made lightly. See *Haley*, 549 A.2d at 1317, citing *Hartley v. Hartley*, 528 A.2d 233 (Pa. Super. 1987); see also *Shindel v. Leedom*, 504 A.2d 353 (Pa. Super. 1986).

**Discussion**

It is respectfully submitted that Defendant's appeal is without merit and should be dismissed.

**1. Defendant's income was properly calculated for purposes of the entry of**

9

**the child support Order.**

Defendant's first alleged error is that the Court erred and abused its discretion in the calculation of Defendant's income for purpose of the entry of the child support Order. Defendant, however, does not aver how, exactly, we erred or abused our discretion in calculating Defendant's income. The February 10, 2023 Order, currently on appeal, made our Order of Court dated October 6, 2022, final. The October 6, 2022 Order of Court was based upon the determination that Plaintiff's monthly net income was $11,154.88 and Defendant's monthly net income was $13,067.00. Defendant was ordered to pay $3,402.00 in child support, effective August 24, 2022. Defendant's obligation was allocated $3,093.00 for current support of three (3) children, and $309.00 for arrears. Arrears were set at $16,145.40 as of October 6, 2022. For the period of 12/1/21 through 12/31/21, the Order of Court dated April 11, 2022 remained in full force and effect. For the period of 1/1/22 through 8/24/22, Defendant's support obligation was set at $3,712.00 per month basic support for the period of time that Plaintiff had a higher childcare expense. The October 6, 2022 support Order was calculated utilizing Plaintiff's 2021 W-2s and her rental income represented on her Federal Income Tax Return. See Conference Notes, October 6, 2022, *Leite*, supra. (C.P. Northampton 10/6/2022). Defendant's income was based upon his 2021 Federal Income Tax return. *Id.*

It is well established that "the support guidelines determine a spouse's or parent's support obligation based on the parties' combined monthly net income, as defined in Pa.R.C.P. No. 1910.16-2, and the number of persons being supported." Pa.R.C.P. No. 1910.16-1(a). "Generally, the basic child support, spousal support, or alimony *pendente lite* obligation is based on the parties' monthly net incomes." Pa.R.C.P. No. 1910.16-2.

10

"Monthly gross income is ordinarily based on at least a six-month average of a party's income. The support law, 23 Pa.C.S. § 4302, defines the term "income" and includes income from any source." Pa.R.C.P. No. 1910.16-2(a). "When a party willfully fails to obtain or maintain appropriate employment, the trier-of-fact may impute to the party an income equal to the party's earning capacity." Pa.R.C.P. No. 1910.16-2(d)(4)(i).

Assessment of an earning capacity to a party in a child support obligation calculation is governed by Pa.R.C.P. No. 1910.16-2(d)(4) which provides as follows:

> (4) *Earning Capacity.*
>
> (i) When a party willfully fails to obtain or maintain appropriate employment, the trier-of-fact may impute to the party an income equal to the party's earning capacity.
>> (A) Earning Capacity Limitation. The trier-of-fact:
>>> (I) shall not impute to the party an earning capacity that exceeds the amount the party could earn from one full-time position; and
>>> (II) shall determine a reasonable work regimen based upon the party's relevant circumstances, including the jobs available within a particular occupation, working hours and conditions, and whether a party has exerted substantial good faith efforts to find employment.
>> (B) The trier-of-fact shall base the party's earning capacity on the subdivision (d)(4)(ii) factors.
>> (C) After assessing a party's earning capacity, the trier-of-fact shall state the reasons for the assessment in writing or on the record.
>> (D) When the trier-of-fact imputes an earning capacity to a party who would incur childcare expenses if the party were employed, the trier-of-fact shall consider reasonable childcare responsibilities and expenses.
>> (ii) Factors. In determining a party's earning capacity, the trier-of-fact shall consider the party's:
>>> (A) child care responsibilities and expenses;
>>> (B) assets;
>>> (C) residence;
>>> (D) employment and earnings history;
>>> (E) job skills;
>>> (F) educational attainment;

11

(G) literacy;
(H) age;
(I) health;
(J) criminal record and other employment barriers;
(K) record of seeking work;
(L) local job market, including the availability of
employers who are willing to hire the party;
(M) local community prevailing earnings level; and
(N) other relevant factors.

Pa.R.C.P. No. 1910.16-2(d)(4).

It is well established that "[c]hild support is a shared responsibility requiring both parents to contribute to the support of their children in accordance with their relative incomes and ability to pay." *Depp v. Holland*, 636 A.2d 204, 208 (Pa. Super. 1994). "Where a party assumes a lower paying job or willfully fails to obtain appropriate employment, the support obligation is determined by his assessed earning capacity." *Baehr v. Baehr*, 889 A.2d 1240, 1245 (Pa. Super. 2005).

Upon review of the record, we determined that it was appropriate to utilize the income set forth in Defendant's most recent federal income tax return to calculate his income. That return included records and documentation of Defendant's income for 12 months, verified by Defendant, and is clearly sufficient to meet that requirement that a support calculation be based upon "at least 6 months" of income, as set forth above. While Defendant initially lost his job through no fault of his own, the record reflected that Defendant had taken a job that was, by his own admission, not generating any income. Based upon the record, it was appropriate to assess Defendant an income for support calculation purposes. Given the circumstances and the record in this case, Defendant's most recent federal tax return was the most appropriate basis upon which to do so. It must also be noted that, during the September 12, 2022 hearing, counsel for

12

Defendant specifically noted that "[w]e have no issue with the earning capacity assigned to Mr. Leite." N.P., September 12, 2022 at 5:3-4.

Based upon the above, it is respectfully suggested that Defendant's first alleged error is without merit. Defendant's income was properly calculated, based upon the record in this matter.

## 2. Plaintiff's childcare costs were properly calculated and included in the Order for support.

The second alleged error raised by Defendant is that we erred and abused our discretion "in the calculation of the childcare costs, and in particular, including the costs associated with an au pair as part of the Order." See Defendant's Statement of Errors, *Leite*, supra. (C.P. Northampton 3/15/2023). It is respectfully submitted that Plaintiff's childcare costs were properly calculated in the instant matter.

At the March 21, 2022 modification conference, Plaintiff reported a child care expense for one child at the rate of $1,148 per month. See Conference Notes – March 21, 2022, Leite, supra. (C.P. Northampton 3/21/2022). This expense was taken into consideration in the support order. At the March 21, 2022 conference, Plaintiff submitted documentation showing that, as of December 3, 2021, she had the au pair expense for the children of $8,695.00 annually. While Defendant argued that the parties and/or children did not need an au pair, Defendant acknowledged that he had agreed to the employment of the au pair in the past, but that he changed his position on the issue of the au pair when he discovered that the au pair was unable to come to his house when he had the children. *Id.* Based upon that information, it was determined that the au pair expense should be included in the calculation of Defendant's support obligation. It was noted in the April 11, 2022 Follow up Notes from the Conference Officer that Plaintiff had received

13

consideration for the expense of the au pair in the February 13, 2020 Order of Court as well.

The October 6, 2022 Conference Notes indicate that Plaintiff had a childcare expense for one child at the rate of $1,148.00 per month. That expense, however, was no longer going to be considered, effective August 24, 2022, based upon the parties' testimony in de novo court. See Conference Notes – October 6, 2022, Leite, supra. (C.P. Northampton 10/6/2022). The only expense regarding the au pair taken into account was the contract amount of $8,695.00. This amount was considered when running calculations for the October 6, 2022 Order, as well as the April 11, 2022 Order. Effective August 24, 2022, the childcare expense for daycare was no longer considered. At the September 12, 2022 hearing, Defendant testified that beginning in the fall of 2019, the parties had hired an au pair for the marital residence. N.P., September 12, 2022 at 13:13-20. Defendant further testified that in March 2020, when the pandemic hit, the need for the au pair ended. N.P. at 14:3-6. There was no au pair expense from the fall of 2020 until November 2021. N.P. at 14:19-22. Defendant was informed in November 2021 that Plaintiff had hired an au pair again. N.P. at 19:3-11. Defendant acknowledged that the parties had hired an au pair in the past. N.P. at 35:12-18. He also acknowledged that the cost of the au pair was consistent with prior costs. N.P. at 37:12-19. Plaintiff testified that the au pair arrived in November 2021 when the Covid-19 travel ban ended. N.P. at 40:13-19. Plaintiff testified that she was currently utilizing the au pair and had been for all of 2022. N.P. at 41:1-11. The au pair returning was a continuation of the last service, after the travel ban was lifted. N.P. at 49:5-8.

Pa.R.C.P. No. 1910.16-6 provides that "[t]he trier-of-fact may allocate between

14

the parties the additional expenses in subdivisions (a)-(e)." Childcare expenses are

specifically listed in subsection (a), and the Rule provides as follows:

**(a) Child care expenses.**
(1) The trier-of-fact:

(i) shall allocate reasonable child care expenses paid by the parties, if
necessary to maintain employment or appropriate education in pursuit of
income.
(ii) may allocate reasonable child care expenses paid by the parties when
the trier-of-fact imputes an earning capacity to a party as provided
in Pa.R.C.P. No. 1910.16-2(d)(4)(i)(D).
(2) The trier-of-fact may require that the obligor's share be added to the
basic child support obligation, paid directly to the service provider, or paid
directly to the obligee.
(3) When a party is receiving a child care subsidy through the Department
of Human Services, the expense allocated between the parties is the
amount actually paid by the party receiving the subsidy.
(4) The party seeking allocation of child care expenses shall provide to the
other party the expense's documentation, such as a receipt or an invoice,
promptly after receipt unless the service provider invoices the parties
separately for the party's proportionate share of the expense.
(5) The trier-of-fact shall have the discretion to not allocate expenses if
documentation is not timely provided to the other party.
(6) Except as provided in subdivision (a)(7), the total child care expenses
shall be reduced to reflect the federal child care tax credit available to the
eligible party, regardless of whether the credit is actually claimed by that
party, up to the maximum annual cost allowable under the Internal
Revenue Code.
(7) If the eligible party is not qualified to receive the credit, the
federal child care tax credit shall not be used to reduce
the child care expenses subject to allocation between the parties.

Pa.R.C.P. No. 1910.16-6(a).

Based upon the record in this matter, we determined that the use of the au pair

was a prior practice, accepted by Defendant, when the parties lived together. We also

determined that the continued use of the au pair is appropriate. While there was a period

of time when an au pair was not in Plaintiff's home, it was determined that this was due

to the Covid-19 pandemic and related travel ban. Upon the travel ban ending, the au pair

15

returned to Plaintiff's home. The au pair is necessary for Plaintiff to maintain employment or appropriate education in pursuit of income. Also, as noted in Rule 1910.16-6(a)(1)(ii), it is permissible to allocate the reasonable childcare costs when an earning capacity is imputed to a party, as was the case for Defendant in this matter.

Based upon the above, it is respectfully suggested that Defendant's second alleged error is without merit. It was not an error of law or abuse of discretion to include the cost of the au pair in the support calculation.

### 3. The parties received a full de novo hearing on Monday September 12, 2022.

Defendant's third alleged error on appeal is that we erred or abused our discretion by failing to allow a full de novo hearing on Monday, September 12, 2022, as we remanded the matter to the Domestic Relations Conference Officer who subsequently entered a Final Order by the Court which is in violation of Pa.R.C.P. 1910.11. This averment is simply without merit.

On September 12, 2022, the parties appeared before the undersigned along with counsel for each party. See N.P., September 12, 2022 (C.P. Northampton 3/18/2023). Both counsel had ample opportunity to set forth their client's position, and each party testified and was cross examined during the hearing, the transcript of which was fifty four (54) pages long. As the hearing was moving toward its conclusion, a sidebar discussion was held off the record. N.P. at 51:3-4. Upon going back on the record, the undersigned noted as follows: "All right. Counsel, and I interrupted what was about to happen here because my understanding with the updated – with the updated tax return that was filed, it's going to be necessary for this matter to go back before the Conference Officer for a recalculation based upon the new income information." N.P. at 51:1-12. The

16

undersigned also noted "[s]o I think the only real main issue right now that this Court has to work on or work at is the issue regarding the additional care; specifically with the au pair. Counsel, does everybody understand and agree with that?" N.P. at 51:19-24. Both counsel agreed. N.P. at 51:25-52:4.

Defendant was not deprived of a full de novo hearing on Monday September 12, 2022. Both parties were permitted to testify and be cross examined. Both counsel were given the opportunity to argue their client's positions. Both counsel agreed that the matter would be remanded to the conference officer. The fact that the case was remanded, with the agreement of the parties, does not indicate that Defendant was deprived of a full de novo hearing, as averred.

After the matter was remanded, Judge Roscioli entered the October 6, 2022 Order. Pa.R.C.P. No. 1910.11 provides the rules and procedures for the DRS office conferences and subsequent hearings. Subsection (f) of that Rule provides as follows:

> **(f)** If an agreement for support is not reached at the conference, the court, without hearing the parties, shall enter an interim order calculated in accordance with the guidelines and substantially in the form set forth in Rule 1910.27€. Each party shall be provided, either in person at the time of the conference or by mail, with a copy of the interim order and written notice that any party may, within twenty days after the date of receipt or the date of the mailing of the interim order, whichever occurs first, file a written demand with the domestic relations section for a hearing before the court.

Pa.R.C.P. No. 1910.11(f). The October 6, 2022 Order specifically notes that it was a "Modified" Order. See Order of Court, Leite, supra. (C.P. Northampton 10/13/2022). The Order was mailed out to the parties and their counsel with a "Notice of Right to Request a Hearing" advising the parties that they had 20 days, until November 3, 2022 to file a request for a de novo hearing. Contrary to Defendant's assertions, a final order was

17

not entered in violation of Pa.R.C.P. 1910.11. Rather the Order was entered, based upon the record, and each party was granted the right to request a de novo hearing with regard to that issue.

Based upon the above, it is respectfully suggested that Defendant's third alleged error on appeal is without merit. The parties were granted a full de novo hearing on September 12, 2022. When the matter was remanded to the DRS conference officer, Pa.R.C.P. No. 1910.11 was fully complied with by DRS and this Court.

## Conclusion

Based upon the above, it is respectfully suggested that Defendant's appeal is without merit and should be denied. Defendant's income was properly calculated for purpose of the entry of the child support Order. The childcare costs, in particular the costs associated with the au pair, were also property calculated and included in the Order. Finally, Defendant was permitted a full de novo hearing on Monday 12, 2022. When the matter was remanded, with the agreement of counsel, the matter was properly decided in compliance with Pa.R.C.P. No 1910.11. Therefore, it is respectfully suggested that Defendant's appeal is without merit and should be dismissed.

BY THE COURT

**ABRAHAM P. KASSIS, J.**

18